739 So.2d 68 (1999)
Michael J. COHEN, M.D., et al., Petitioners,
v.
Michael DAUPHINEE, etc., Respondent.
No. 91,239.
Supreme Court of Florida.
April 15, 1999.
Rehearing Denied August 24, 1999.
Jennings L. Hurt III and Richard B. Mangan, Jr. of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, Florida, and Arthur J. England, Jr. and Brenda K. Supple of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, Florida, for Petitioners.
Terry L. McCollough and William G. Osborne, Orlando, Florida, for Respondent.
Jack W. Shaw, Jr. of Brown, Obringer, Shaw, Beardsley & DeCandio, Jacksonville, Florida, for Florida Defense Lawyers Association, Amicus Curiae.
Christopher L. Nuland, Jacksonville, Florida, for Florida Medical Association, Florida Surgeons Firm, Florida Society of Thoracic and Cardiovascular Surgeons, and Florida Society of Internal Medicine, Amici Curiae.
Edward S. Schwartz of the Law Offices of Philip M. Gerson, P.A., Miami, Florida, for the Academy of Florida Trial Lawyers, Amicus Curiae.
HARDING, C.J.
We have for review the decision in Dauphinee v. Wilstrup, 696 So.2d 388 (Fla. 5th DCA 1997), based upon conflict with the Fourth District Court of Appeal's opinion in Citron v. Shell, 689 So.2d 1288 (Fla. 4th DCA 1997). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
This Court accepted jurisdiction to resolve the conflict between the Fifth District Court of Appeal's decision in the case below and the decision of the Fourth District Court in Citron on the issue of whether the presuit affidavit, required pursuant to sections 766.203(2) and (3), Florida Statutes (1995),[1] is protected by the provisions *69 of section 766.106(5), Florida Statutes (1995).[2] We conclude that it does and, accordingly, approve the decision below.[3]

Facts
Michael Dauphinee, respondent, as the personal representative of the estate of Rosemarie P. Dauphinee, brought a medical malpractice action for wrongful death against several defendants, including Dr. Michael V. Cohen, Dr. Samuel Martin, and Vascular Specialists of Central Florida, Inc. (petitioners). See Dauphinee, 696 So.2d at 389. Dauphinee alleged that Dr. Cohen was negligent in failing to timely diagnose an abdominal infection in Rosemarie, which resulted in toxic shock and sepsis. Dauphinee further alleged that Rosemarie died as a result of the misdiagnosis. See id.
At trial, the court allowed the defendants to impeach one of Dauphinee's experts, Dr. W. Stuart Battle, M.D., with the presuit affidavit he had prepared as part of Dauphinee's compliance with the presuit screening requirements of section 766.203(2). See id. The trial court directed a verdict for two of the defendants, and the jury found in favor of the remaining defendants, including Drs. Cohen and Martin (two of the three petitioners herein). See id.
On appeal, the Fifth District Court held that the trial court erred in allowing the defendants to use Dr. Battle's presuit affidavit for impeachment purposes, reasoning that the affidavit was protected by section 766.106(5). See id. at 389-90. The court reversed the final judgment and remanded the case for a new trial with respect to the defendants against whom Dr. Battle's testimony was directed, the petitioners here. See id. at 390.
In Citron, a pro se plaintiff sued his doctor for medical malpractice. In his pleadings, the plaintiff stated:
Plaintiffs certify a good-faith belief that grounds exist for an action against the defendant Carl Citron, M.D., based on RES IPSA loquitur doctrine, and pre-suit investigation by plaintiffs.
. . . .
Cause of action is medical malpractice brought on by negligence, fraud of defendant *70 Carl Citron acts [sic] as described in the amended complaint.
689 So.2d at 1289.
On the defendant's motion, the trial court dismissed the plaintiff's complaint with leave to amend. Around the time that the plaintiff filed his amended complaint, he sent the doctor a handwritten notice of intent to initiate malpractice litigation. Attached to the document was a billing record and a copy of a surgical pathology report from the doctor. The doctor moved to dismiss the amended complaint on the grounds that it failed to comply with the presuit screening requirement of section 766.203(2). Specifically, the doctor asserted that the plaintiff had failed to provide the required verified written medical expert opinion corroborating reasonable grounds to initiate malpractice litigation. The trial court refused to dismiss the amended complaint and ordered the doctor to answer the complaint. The doctor then sought review of that order by a petition for a writ of certiorari. See Citron, 689 So.2d at 1289.
In his response to the doctor's petition, the plaintiff argued that because the corroborating opinion from a medical expert is not discoverable,[4] the doctor was not irreparably harmed by the plaintiff's failure to provide such an opinion. See 689 So.2d at 1289. In rejecting this argument, the court stated: "We understand the work product protection in section 766.106 not to apply to the corroborating opinion requirement in section 766.203." Id. at 1290.[5]
If, by that statement, the Fourth District Court was indicating only that section 766.106(5) does not defeat the requirement of providing an affidavit as a condition precedent to filing a medical malpractice action, then we agree. If, on the other hand, the Fourth District Court meant to say that the clear and unambiguous language of section 766.106(5) does not protect the corroborative affidavit itself from formal discovery and admissibility, then we must disagree. To the extent that Citron would allow an opposing party to use a corroborative affidavit to impeach witness testimony at trial, we disapprove that decision and hold that section 766.205(4) protects the corroborative affidavit from any use by the opposing party, including impeachment of the expert witness who prepared the affidavit.

Legislative History
The language of section 766.106(5) was first adopted by the legislature in 1985 as section 768.57. See Ch. 85-175, § 14, at 1199-1200, Laws of Fla. (codified at § 768.57, Fla. Stat. (1987)). Section 768.57 required a claimant to provide a notice of intent to initiate litigation to each prospective defendant as a condition precedent to filing a medical negligence action. See id. To help alleviate what it saw as a medical malpractice litigation crisis, the legislature required claimants to certify in their complaints that they had conducted a reasonable investigation resulting in a good faith belief that sufficient grounds existed to support the filing of the action. See Ch. 85-175, § 12, at 1196, Laws of Fla. (codified at § 768.495(1), Fla. Stat. (1987)). Good faith could be substantiated if the plaintiffs counsel had obtained a written opinion from an expert that sufficient grounds existed to support the filing of the action. See id. However, no such written opinion was required.
*71 Responding to complaints that this was an empty requirement, the legislature, in 1988, adopted procedures for what was termed "presuit investigation." See Ch. 88-1, §§ 48-53, at 164-68, Laws of Fla. (codified at §§ 766.201-766.206, Fla. Stat. (1989)). Section 768.57 was renumbered as 766.106 and was amended to include subsection (7) dealing with informal discovery during the period after the filing of the notice of intent and the filing of the suit. See Ch. 88-277, § 48, at 1494, Laws of Fla.
At the heart of the presuit investigation amendments was the requirement that an expert's affidavit be obtained and that it be attached to the notice of intent to initiate litigation. See § 766.203(2), Fla. Stat. (1989). Section 766.205(4), which is virtually identical to section 766.106(5), was also added at that time.[6] However, the simultaneous enactment of sections 766.205(4) and 766.203(2) may indicate that the legislature intended section 766.205(4), rather than section 766.106(5), to apply to the affidavit attached to the notice of intent. This view is further supported by the observation that the old section 768.57(5), which could not have applied to the required expert affidavit as there was no such requirement while that provision was in effect, became the new section 766.106(5). Further, the original section 768.57(5) and its successor section 766.106(5) are designated as dealing with "presuit screening" while new sections 766.201-766.206 are designated as dealing with "presuit investigation." Because these designations exist today side by side, it is apparent that the legislature intended to distinguish between presuit screening, covering the period up to the serving of the notice of intent, and presuit investigation, covering the period between the serving of the notice of intent and the filing of the suit.
While section 766.106(5) is the basis for the district courts' opinions at issue here, based upon the history of chapter 766, we believe that it is section 766.205(4), and not section 766.106(5), which prevents a party from using a corroborative affidavit to impeach witness testimony at trial. However, since the language of section 766.106(5) is virtually identical to that of section 766.205(4), our analysis of this issue remains the same regardless of what section is used.

Analysis
The courts of this state, including this Court, have uniformly found that the legislature enacted chapter 766 to "promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding." Williams v. Campagnulo, 588 So.2d 982, 983 (Fla. 1991); see also Kukral v. Mekras, 679 So.2d 278, 281 (Fla.1996) (quoting Williams, 588 So.2d at 983); Adventist Health System/Sunbelt, Inc. v. Watkins, 675 So.2d 1051, 1052 (Fla. 5th DCA 1996) (stating that the legislative intent of chapter 766 is to promote settlement); Grimshaw v. Schwegel, 572 So.2d 12, 13 (Fla. 2d DCA 1990) ("[I]t is apparent that the legislature considered that the exchange of information during the presuit screening process would be greater if confidentiality were assured. Obviously, the legislature determined that this policy outweighed the need for civil litigants to obtain certain discovery generated by the presuit screening process.").
Indeed, the prevailing policy of this state relative to medical malpractice actions is to encourage the early settlement of meritorious claims and to screen out frivolous claims. See Williams, 588 So.2d at 983; Adventist Health System, 675 So.2d at 1052; see also Medical Malpractice Recommendations, in Report of the Academic Task Force for Review of the *72 Insurance and Tort Systems 15 (1987) (providing the basis for chapter 88-1, Laws of Florida, and listing as its primary recommendation that "[m]eritorious medical negligence claims should be distinguished from non-meritorious negligence claims at the earliest possible point"). This policy is best served by the free and open exchange of information during the presuit screening process. Likewise, the free and open exchange of information will more likely occur if the parties are assured of the confidentiality of the information at trial. See Grimshaw, 572 So.2d at 13.
Petitioners contend that protecting possibly untruthful corroborative affidavits from cross-examination at trial runs counter to the legislature's intent of weeding out non-meritorious claims. We reject this argument in light of the fact that the legislature provided other protections against an affiant's untruthfulness in chapter 766, Florida Statutes (1995).[7] We believe that the legislature provided these protections precisely because it wanted to protect the corroborative affidavit and other information gathered pursuant to the presuit screening process from admissibility at trial.
Furthermore, the legislature recognized that the corroborative affidavit, by definition, would have to be prepared at a point when not all relevant information would be available to the expert. The legislature understood that as the case progressed important information might become available, both through informal discovery during the presuit screening process and through formal discovery after the actual initiation of litigation. As this information becomes available, an expert's opinion will likely change. Thus, to subject an affiant to impeachment based upon information contained in the corroborative affidavit would unfairly prejudice the affiant for information subsequently revealed during both the informal and formal discovery phases. The corroborative affidavit serves the purpose of ensuring that reasonable grounds to support the claim of medical negligence exist at the time the affidavit is prepared and submitted to the potential defendants.
Petitioners also point out that the statements, discussions, written documents and reports listed in section 766.106(5) are protected not only from admissibility, but also from discoverability.[8] Because the statute provides no means to distinguish between admissibility and discoverability, petitioners argue that it is reasonable to assume that the legislature intended both prohibitions to apply to everything it deemed appropriate for statutory protection. Furthermore, petitioners contend, the protection from discoverability cannot apply to the corroborative affidavit because the entire purpose of the affidavit is to convey information to the potential opposing party. Thus, petitioners assert that because the protection from discoverability cannot apply to the corroborative affidavit and because the protections from discoverability and admissibility must apply equally, the protection from admissibility is inapplicable to the corroborative affidavit.
Petitioners' argument, however, fails to take into account the difference between the informal and formal discovery phases in a medical malpractice action. Section *73 766.106(6), Florida Statutes (1995), provides that after the prospective defendant receives the notice of intent to initiate litigation and the corroborating affidavit, "the parties shall make discoverable information available without formal discovery." (Emphasis added.) Section 766.106(7), Florida Statutes (1995), speaks of the availability of "informal discovery" for the taking of unsworn statements during the presuit screening process. (Emphasis added.) Thus, it is obvious that the legislature distinguished the exchange of information during the presuit screening process from the formal discovery mandated by the Rules of Civil Procedure that is available to the parties after the initiation of the civil action. The fact that a statement, discussion, written document, or report is available to the opposing party during the informal discovery of the presuit screening process does not defeat the legislature's ability to protect that item from formal discovery after initiation of the suit and from admissibility at trial.
Finally, we emphasize that the clear and unambiguous language of section 766.205(4) provides that "[n]o statement, discussion, written document, report, or other work product generated solely by the presuit investigation process is discoverable or admissible in any civil action for any purpose by the opposing party." Surely, the corroborative affidavit required by section 766.203(2) is either a statement or written document generated by the presuit investigation process and, as such, enjoys the protection of the statute.

Conclusion
For the reasons expressed above, we hold that the presuit affidavit required by sections 766.203(2) and (3) is protected by the provisions of section 766.205(4). Therefore, an opposing party may not impeach an expert witness in a medical malpractice action with a corroborative affidavit prepared by that witness in satisfaction of the requirements of sections 766.203(2) and (3).
Accordingly, we approve the decision below and disapprove the opinion in Citron to the extent that it is inconsistent with this opinion.
It is so ordered.
SHAW, WELLS, and PARIENTE, JJ., and OVERTON, Senior Justice, concur.
ANSTEAD, J., dissents with an opinion, in which KOGAN, Senior Justice, concurs.
ANSTEAD, J., dissenting.
In my view the majority's conclusion that information already furnished to an opposing party cannot thereafter be discovered or used by that party is contrary to logic, the law and good public policy. The creation of an irrational fiction that information already discovered is undiscoverable does nothing but undermine the integrity of the medical malpractice statutory scheme and the court proceedings based thereon.

LOGIC
No one can dispute that there is no actual confidentiality as to the affidavit here in question since it was voluntarily provided to the defendants. Surely, logic and common sense would compel us to conclude that something already known and provided to the opposing party would not ordinarily be classified as work product and hence, undiscoverable. Obviously there is nothing confidential about information once it is provided to an adversary. In addition, it has long been the rule in Florida that once a medical expert is designated as a potential witness, that witness is subject to full discovery including the discovery of all opinions of that expert. Those have long been the rules of our civil proceedings, medical malpractice claims included.

THE LAW
The question then becomes whether the law clearly requires a contrary outcome. The affidavit at issue in this case is the *74 corroborating verified written medical expert opinion required by section 766.203(2), Florida Statutes (1995), to be submitted to all potential defendants at the time a notice of intent to initiate medical malpractice litigation is provided. Hence, we have a very clear legislative policy not only favoring, but requiring that this information be disclosed to the opposing party. While the notes prepared by the expert to assist him in preparing the medical opinion may be protected as work product because they are not required to be disclosed to the opposing party by section 766.205(4), see Whealton v. Marshall, 631 So.2d 323 (Fla. 4th DCA 1994), his opinion contained in the affidavit disclosed to the opposing party should not be.
Section 766.205(4), Florida Statutes (1995), expressly provides:

No statement, discussion, written document, report, or other work product generated by the presuit investigation process is discoverable or admissible in any civil action for any purpose by the opposing party. All participants, including, but not limited to, hospitals and other medical facilities, and the officers, directors, trustees, employees, and agents thereof, physicians, investigators, witnesses, and employees or associates of the defendant, are immune from civil liability arising from participation in the presuit screening process.
(Emphasis supplied.)[9] Thus, section 766.205(4), Florida Statutes, provides an immunity from discovery or admission into evidence only of "work product" material generated by the presuit investigation process.[10] The statutory reference to "other work product" in section 766.205(4) demonstrates that the statements, documents, etc., referred to earlier in the statutory sentence refer to work product. If the statute were intended to apply to all statements, all written documents, etc., of any kind or description, the word "other" would be irrelevant and unnecessary. Hence, the only rational explanation for the use of the word "other" in this statutory context is that the preceding items were likewise items which were "work product." As demonstrated above, information clearly provided to the opposing side in litigation cannot, under any ordinary definition, be classified as confidential work product. Therefore, no legislative policy in protecting confidential work product is promoted by subsequently creating a fiction and making information that is clearly not work product, and that has already been discovered, "undiscoverable" or "inadmissible."
Furthermore, as a fundamental rule of statutory interpretation, courts should avoid reading a statute in a way that would render other parts of the statute meaningless. See Unruh v. State, 669 So.2d 242, 245 (Fla.1996). This rule illustrates why sections 766.106(5) and 766.205(4), Florida Statutes, apply only to work product material. If those statutory subsections applied to all materials generated in any way during the presuit process, there would be no need for the legislature to *75 have enacted other provisions in the statutory scheme. One broad and all-encompassing provision, such as the one given effect by the majority today, would be enough. Yet section 766.106(5) contains numerous specific provisions protecting particular material.
Section 766.106(7)(a) provides that unsworn statements taken during the presuit screening process may be used only for the purpose of presuit screening and are not discoverable or admissible in any civil action for any purpose by any party. Section 766.106(7)(c) provides that reports of physical or mental examinations of a claimant taken during the presuit are "available to the parties and their attorneys upon payment of the reasonable cost of reproduction and may be used only for the purpose of presuit screening." Section 766.106(10)(a), Florida Statutes, provides that any rejected offer to admit liability or for arbitration on damages "is not admissible in any subsequent litigation." Finally, section 766.106(11) provides that where there are plural potential defendants "[n]o offer by any prospective defendant to admit liability and for arbitration is admissible in any civil action." If the Legislature intended the language in section 766.106(5) and 766.205(4) to be all-encompassing, and not limited to work product, there would be no need for these other specific discovery and evidentiary protections.
Other district court opinions also illustrate and support this common-sense interpretation. In Citron v. Shell, 689 So.2d 1288 (Fla. 4th DCA 1997), a pro se plaintiff failed to comply with the applicable presuit screening requirements but the trial court refused to dismiss the action with prejudice. On appeal, the plaintiff contended that the required corroborating medical opinion was not discoverable because of the provisions of section 766.106(5). See id. at 1290. The court rejected the plaintiff's arguments and pointed out that plaintiff had failed to consider the effect of section 766.203(2), Florida Statutes (1995), which requires that the corroborating opinion be provided to the opposing party. Id. More precisely, the court stated:
We understand the work product protection in section 766.106 not to apply to the corroborating opinion requirement in section 766.203. Accordingly, we conclude that the defendant has satisfied the requirement of irreparable harm necessary to our common law certiorari jurisdiction.
Id. (emphasis added).[11] In Lowe v. Pugh, 682 So.2d 1104 (Fla. 2d DCA 1996), plaintiffs sought review of an order requiring them to produce the notices of intent to initiate litigation, which had previously been mailed to the initial defendants, to the newly added defendants. In denying certiorari and hence protection from discovery of the notices, the district court declared:
We agree with the trial court that the statutory notices of intent to initiate litigation that were mailed to an opposing party are not documents protected by [section 766.106] subsection 5.
Id. at 1105.
Further, in Adventist Health System/Sunbelt, Inc. v. Watkins, 675 So.2d 1051, 1052 (Fla. 5th DCA 1996), the Fifth District held that section 766.106(5) did not preclude discovery or use in evidence of a physician's verified medical opinion which had been attached to the notice of intent in litigation involving other parties. It affirmed the trial court's ruling that a defendant's expert witness could be cross-examined using the affidavit he had prepared for the presuit screening in connection with an earlier incident at another hospital. See id. The court concluded that the affidavit could not be considered "work product generated by the presuit screening *76 process" of the case before it because the expert was not a participant in the presuit screening process of the case. See id. While I recognize the difference in circumstances between Adventist and the case before us today, I nevertheless find it interesting and illogical how under Adventist, a party may impeach his opponent's expert witnesses by use of their presuit affidavits prepared in a prior case, yet under the decision today, a party cannot impeach his opponent's expert witness by use of the very affidavit which the witness prepared in the case being tried.
The majority relies on the Second District's decision in Grimshaw v. Schwegel, 572 So.2d 12 (Fla. 2d DCA 1990), which held that a report of the physician's expert written to the physician's insurers during the presuit screening process was exempt from discovery under the discovery privilege. However, Grimshaw is distinguishable because the report sought to be discovered by the plaintiff was written solely for petitioner's insurers and was not the verified written medical expert opinion that is required by section 766.203(2) to be disclosed to the opposing party as corroboration of the lack of reasonable grounds for medical negligence litigation. As such, it maintained the "work product" status that is intended to be protected by sections 766.106(5) and 766.205(4).

PUBLIC POLICY
Today's result can only be justified if the statutory language clearly requires it or if it is necessary to promote a specific public policy. As demonstrated above, the statutory language does not require it, but rather provides discovery and evidentiary protection only as to work product documents. The legislative interest in confidentiality of the presuit screening process is obviously not affected because the parties are statutorily required to provide such affidavits to each other as part of the presuit process. Rendering such affidavits undiscoverable and not usable for impeachment purposes in connection with the very case for which they were originally prepared advances no other identifiable public policy.
In fact, it would appear that public policy concerns would call for precisely the opposite conclusion. The majority correctly points out that the prevailing policy of this State relative to medical malpractice actions is to encourage the early settlement of meritorious claims and to screen out frivolous ones. Majority op. at 5. However, what better way do courts have to ensure compliance with this policy than by making it known that an expert's opinion will not go unchecked or unchallenged at trial? It is this expert's verified written medical opinion which permits medical malpractice litigation to be initiated in the first place. If this same expert, in sworn testimony in the ensuing litigation, testifies to something inconsistent with the presuit affidavit, there may be legitimate concern as to whether there was valid cause to initiate the litigation in the first instance. Surely, legislative policy would favor the disclosure and evaluation of any material changes in the initial expert's opinion. Our contrary holding will allow abuses, whether intentional or neglectful, to go unchecked. As it is, the legislature provided that all participants in the presuit investigation are immune from civil liability arising from participation in the presuit investigative process. See § 766.106(5), Fla. Stat. (1995).[12]
Finally, a trial is, in its very essence, a search for truth. Section 90.402, Florida Statutes (1997), consistent with that search, provides: "All relevant evidence is *77 admissible, except as provided by law." It appears undisputed that the presuit affidavit here in issue was relevant since it was the foundation of the malpractice litigation. Indeed, it could hardly be argued otherwise, since the statements Dr. Battle had previously made, which were inconsistent with his trial testimony, were used to attempt to impeach him-a practice permitted and encouraged by section 90.608, Florida Statutes (1997). Accordingly, absent some compelling reason to withhold it, any evidence which might shed light on where the truth lies should be available.
If the doctor's trial testimony is inconsistent with the sworn affidavit he executed in the same case, it would logically appear legitimate to raise that inconsistency before the jury. The majority states that the corroborative affidavit is usually prepared by the expert at a point when not all the relevant information would be available to the expert. Majority op. at 72. As a result, subjecting an affiant to impeachment based upon information contained in the corroborative affidavit would unfairly prejudice the affiant. Id. However, no unfair prejudice would result to the affiant or the party he represents as long as it is understood and expressed at trial that the opinion was rendered based on the information available to the affiant at the time the affidavit was prepared. As in any trial, the doctor, or any witness for that matter, should be entitled to explain any inconsistencies in his testimony and the reasons therefor, just as Dr. Battle was permitted to do here. The jurors can then assess those explanations in evaluating the credibility of the doctor's testimony. In some cases, jurors may conclude that the doctor sufficiently explained why his opinion had changed. In others, however, the jury may conclude that a particular explanation is not credible. But that is an evaluation the jury should be entitled to make based on all the relevant and available information, especially information already disclosed and made available to the opposing party. That is what a search for the truth under our adversary system is all about.
KOGAN, Senior Justice, concurs.
NOTES
[1] Sections 766.203(2) and (3) provide:

(2) Prior to issuing notification of intent to initiate medical malpractice litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:
(a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and
(b) Such negligence resulted in injury to the claimant.
Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(5), at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence.
(3) Prior to issuing its response to the claimant's notice of intent to initiate litigation, during the time period for response authorized pursuant to s. 766.106, the defendant or the defendant's insurer or self-insurer shall conduct an investigation to ascertain whether there are reasonable grounds to believe that:
(a) The defendant was negligent in the care or treatment of the claimant; and
(b) Such negligence resulted in injury to the claimant.
Corroboration of lack of reasonable grounds for medical negligence litigation shall be provided with any response rejecting the claim by the defendant's submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(5), at the time the response rejecting the claim is mailed, which statement shall corroborate reasonable grounds for lack of negligent injury sufficient to support the response denying negligent injury.
(Emphasis added.)
[2] Section 766.106(5) provides:

No statement, discussion, written document, report, or other work product generated by the presuit screening process is discoverable or admissible in any civil action for any purpose by the opposing party. All participants, including, but not limited to, physicians, investigators, witnesses, and employees or associates of the defendant, are immune from civil liability arising from participation in the presuit screening process.
[3] For the following reasons, we conclude that it is section 766.205(4), and not section 766.106(5), which protects the presuit affidavit.
[4] Although the plaintiff did not explicitly so state, he apparently based this argument on section 766.106(5). See supra note 2.
[5] This statement, however, should be read in light of its immediately preceding paragraph. There, the court pointed out that the protection in section 766.106 against discoverability and use by an opposing party does not defeat the requirement in section 766.203(2) of providing the corroborative affidavit. See Citron, 689 So.2d at 1289. Further, in the quote relied upon by petitioners, the court stated: "We understand the work product protection in section 766.106 not to apply to the corroborating opinion requirement ..." as opposed to the corroborating opinion itself. See id. (emphasis added).
[6] Section 766.205(4) provides in pertinent part:

(4) No statement, discussion, written document, report, or other work product generated solely by the presuit investigation process is discoverable or admissible in any civil action for any purpose by the opposing party.
[7] For example, sections 766.206(2) and (3), Florida Statutes (1995), provide that a claim will be dismissed and a defense stricken if the notice of intent to initiate litigation or the response thereto does not comply with the reasonable investigation requirements provided. These subsections also provide for the imposition of personal liability on a claimant, defendant, or attorney for the opponent's attorney fees and costs for failure to comply with the reasonable investigation requirements. Section 766.206(5)(a), Florida Statutes (1995), requires a court to report to the state licensing authority any medical expert who provides a corroborative affidavit that lacks reasonable investigation. Although section 766.106(5) provides civil immunity to all participants in the presuit screening process, it does not preclude the other statutory sanctions provided.
[8] This protection is identical to that which is provided in section 766.205(4).
[9] I agree with the majority that it is section 766.205(4) and not 766.106(5) that is at issue in this case. The Legislature seems to have made a distinction between the presuit investigation process and the presuit screening process. Although I recognize this distinction, I see no indication that the Legislature intended any meaningful difference between them for purposes of discoverability. Moreover, since both sections incorporate the same operative language, I conclude that neither section was intended to preclude the use of the affidavit in question at trial.
[10] From the statutory scheme, it appears that presuit investigation covers the period up to the serving of the notice of intent and presuit screening covers the period from the serving of the notice of intent to the time the actual claim is filed. However, it appears that the majority has inadvertently mistakenly calculated the time intervals covered by each presuit period. See Majority op. at 5 ("[I]t is apparent that the legislature intended to distinguish between presuit screening, covering the period up to the serving of the notice of intent, and presuit investigation, covering the period between the serving of the notice of intent and the filing of the suit.").
[11] In another part of the opinion, the court refers to section 766.106(5) as the section "which provides that work product generated during the pre-screening process is not discoverable." Citron, 689 So.2d at 1290. This language lends further support that the language in sections 766.106(5) and 766.205(4) only talks about work product.
[12] Although the majority points out that other provisions of the chapter, i.e. sections 766.206(2), 766.206(3), and 766.206(5)(a), provide for some accountability, in my opinion, this is not enough. Sections 766.206(2) and (3) only impose personal liability for the opponent's costs and fees on the attorney, claimant or defendant, not on the medical expert. The only deterrent provided against a medical expert is the possibility of the court reporting the medical expert to the state licensing authority for rendering a corroborative affidavit that lacks reasonable investigation.