BLUE, Acting Chief Judge.
Laurie Barclay, M.D., appeals the order that disqualified her corroborating affidavit rendered in a medical malpractice action and reported her to the Division of Medical Quality Assurance. Because the motion that resulted in the court’s order was untimely, we reverse.
We do not have a complete record of the underlying medical malpractice litigation; consequently, we are unaware of the basis for claims against other health care professionals, which were or may remain pending. Pertaining to this case, the record reveals that Mrs. Tippett was referred to Dr. Susac, a specialist in neurology. Dr. Susac ordered an MRI; and it revealed a serious condition that had not been previously diagnosed. Dr. Susac immediately conferred with a recognized specialist at the University of Florida and made reeom-mendations for treatment to Mrs. Tippett’s primary physician.[1]
Some time later, Mrs. Tippett consulted an attorney concerning a potential claim of medical negligence. As is the custom since Fabre,[2] the attorney included Dr. Susac in the investigation. Mrs. Tippett herself requested a copy of her records from Dr. Susac’s office. These records were then sent to Dr. Barclay for an opinion as to whether there had been any negligence on the part of Dr. Susac in his treatment of Mrs. Tippett. See § 766.203, Fla. Stat. (1996). Dr. Barclay opined that Dr. Susac had failed to consult a specialist and to recommend appropriate treatment for Mrs. Tippett’s problem, and she signed a corroborating affidavit expressing this opinion.
Unfortunately, for reasons unknown, the records obtained by Mrs. Tippett from Dr. Susac’s office were not a complete set of records. While Dr. Susac’s complete records negated Dr. Barclay’s opinion, Dr. Barclay did not have these records. Although Dr. Susac recognized immediately that his records contradicted the opinion of Dr. Barclay, nothing was done during the ninety-day presuit screening period to call this to the attention of Mrs. Tippett’s attorney or Dr. Barclay. As provided by section 766.203(3)(b):
Corroboration of lack of reasonable grounds for medical negligence litigation shall be provided with any response rejecting the claim by the defendant’s submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(5), at the time the response rejecting the claim is mailed, which statement shall corroborate reasonable grounds for lack of negligent injury sufficient to support the response denying negligent injury.
*154 The perfunctory affidavit, filed on Dr. Su-sac’s behalf, declared that he was not negligent, but it did not cite the corroborating records in Dr. Susac’s file and otherwise failed to comply with the requirements of section 766.203(3)(b).
More than six months after suit was filed, a summary judgment was requested on Dr. Susac’s behalf. The affidavit accompanying the motion for summary judgment contained the documents missing from the records on which Dr. Barclay based her corroborating opinion. Summary judgment was granted in favor of Dr. Susac without opposition.
More than ten months after the trial court entered final summary judgment in favor of Dr. Susac, a motion was filed on his behalf seeking to disqualify Dr. Barclay’s corroborating opinion. The motion cited sections 766.206(1) and (5),[3] and alleged that Dr. Barclay had failed to conduct a reasonable investigation either because she failed to obtain all the records or because she failed to notice, from the records she did have, that there were missing records. An evidentiary hearing was held, which resulted in the order on appeal disqualifying Dr. Barclay’s opinion and reporting her to the Division.
Our concern results from the timing of the motion to disqualify. We conclude that the legislative plan for prompt resolution of medical negligence claims calls for parties to seek disqualification of corroborating opinions at the earliest possible time.[4] Where, as in this case, the information necessary for disqualification of the corroborating opinion was available during the presuit screening period, disqualification must be sought during this period rather than at the termination of the case. In enacting chapter 766, the legislature has promoted the early settlement of meritorious claims and the early resolution of frivolous claims. See Cohen v. Dauphinee, 739 So.2d 68 (Fla.1999). As the supreme court has noted:
Furthermore, the legislature recognized that the corroborative affidavit, by definition, would have to be prepared at a point when not all relevant information would be available to the expert. The legislature understood that as the case progressed important information might become available, both through informal discovery during the presuit screening process and through formal discovery after the actual initiation of litigation. As this information becomes available, an expert’s opinion will likely change.
739 So.2d at 72 (emphasis added). Had Mrs. Tippett’s attorney investigated the completeness of Dr. Susac’s records in the period after the notice of intent and made these records available to Dr. Barclay in accordance with section 766.203(3), we are confident that suit would not have been filed against Dr. Susac. Likewise, had Dr. Susac’s attorney or other representative produced the missing records for examination by Dr. Barclay, as was done in the unopposed motion for summary judgment, we believe that Dr. Susac would have been spared from the medical malpractice action. We conclude these were failings by Dr. Susac’s trial counsel and/or his insurance company during the presuit screening period.[5]
Because the proper time to disqualify Dr. Barclay’s corroborating opinion was during the presuit period, and the disqualifying information was available during that *155 period, it was error to disqualify the opinion after completion of the suit against Dr. Susac.
Accordingly, we reverse the order on appeal.
NORTHCUTT and SALCINES, JJ., concur.

. Although it may be of no comfort to Dr. Susac, we note that from all indications in the record, he should never have been named in the litigation and, in fact, the record shows Dr. Susac rendered laudatory treatment for his patient.

. Fabre v. Marin, 623 So.2d 1182 (Fla.1993), receded from in part, Wells v. Tallahassee Mem’l Reg'l Med. Ctr., Inc., 659 So.2d 249 (Fla.1995).

. Section 766.206(5)(a), Florida Statutes (1995), provides in pertinent part:
If the court finds that the corroborating written medical expert opinion attached to any notice of claim or intent or to any response rejecting a claim lacked reasonable investigation, the court shall report the medical expert issuing such corroborating opinion to the Division of Medical Quality Assurance or its designee.

. See § 766.201(2), Fla. Stat.

. The attorneys involved in this appeal did not enter the fray until after the entry of summary judgment in favor of Dr. Susac and are not included in any criticism we may have for the proceedings prior to the summary judgment.