899 So.2d 1161 (2005)
Jack RUDLOE, Individually, and Gulf Specimen Company, Incorporated, a Florida Not for Profit Corporation, Appellants,
v.
Dr. David Michael KARL, Individually, and The Florida State University Board of Trustees, Appellees.
No. 1D03-4651.
District Court of Appeal of Florida, First District.
April 7, 2005.
*1162 H. Richard Bisbee, Esquire and Patrick R. Frank, Esquire, Tallahassee, for Appellants.
Brian C. Keri, Esquire, Tallahassee, for Appellee Florida State University Board of Trustees and John S. Derr, Esquire, of the Derr Law Firm, Tallahassee, for Appellee Dr. David Michael Karl.

ON REHEARING
BENTON, J.
Jack Rudloe and Gulf Specimen Company, Inc. (Gulf Specimen), a biological supply service corporation of which Mr. Rudloe is president and with which he is "closely affiliated," appeal an order dismissing with prejudice the Florida State University Board of Trustees (FSU) from the libel action brought against FSU and David Michael Karl below. See Fla. R. App. P. 9.110(k). Substituting the following for the opinion issued November 5, 2004, we reverse.
On appeal, we consider anew the legal sufficiency, as to FSU, of the second amended complaint Mr. Rudloe and Gulf Specimen filed in circuit court. "Whether a complaint should be dismissed is a question of law." City of Gainesville v. State, Dep't of Transp., 778 So.2d 519, 522 (Fla. 1st DCA 2001). "A trial court's ruling on a motion to dismiss based on a question of law is subject to de novo review." Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So.2d 582, 584 (Fla.2000).
Originally Mr. Rudloe and Gulf Specimen filed suit only against Dr. Karl, the *1163 alumnus of Florida State University's Department of Oceanography who authored and submitted an account of "what it was like to be a student at the department," in response to the Oceanography Department's request for "students['] ... version[s] of departmental history during the time they were here." The original complaint, like its successors, alleged that Dr. Karl's account defamed Mr. Rudloe, a fellow alumnus, by insinuating that Mr. Rudloe had stolen a "priceless Neopilina specimen... from the lab [because the rare specimen] ... later show[ed] up for sale in Rudloe's Gulf Specimen Company catalog." Plaintiffs' first amended complaint, adding FSU as a defendant, alleged:
12. Upon information and belief, during the month of May, 2000, the Defendant, Dr. Karl authored, printed, published and circulated, or caused to be printed, published and circulated by the Defendant, FSU, in the FSU Department of Oceanography Newsletter, (Spring/Summer Edition), an article contained in the "Alumni Notes" section concerning the Plaintiffs....[1]
....
16. The Defendants, Dr. Karl and FSU, with evil motive and actual malice... intended to cause the individual plaintiff to suffer emotional distress, and to falsely depict Plaintiff to be a thief; dishonest or otherwise lacking in good moral character; and with knowledge of the falsity or serious doubt as to the truth of the statements and claims made in the article, authored the article and caused the article to be published and distributed both in paper form and electronically, worldwide, republished daily on a "24/7" basis on the FSU Department of Oceanography web site up to and including February 8, 2002.
The first amended complaint alleged further that FSU negligently breached its duties "to the Plaintiffs to research and verify facts concerning the Plaintiffs prior to authoring and publishing publications concerning same .... [and] to carefully review materials that it solicited for publication so as to not defame persons ... in university publications."
FSU filed a motion to dismiss addressed to the first amended complaint seeking dismissal as a party "on the basis of sovereign immunity." The trial court granted FSU's motion to dismiss, but gave appellants, plaintiffs below, an opportunity to file a second amended complaint.
In their second amended complaint, Mr. Rudloe and Gulf Specimen again alleged that FSU had negligently breached its duty to verify the facts in Dr. Karl's submission to the Oceanography Department, and specifically relied on Miami Herald Publ'g Co. v. Ane, 458 So.2d 239 (Fla.1984). But they abandoned their allegations that FSU, i.e., (an) FSU employee(s), *1164 had published Dr. Karl's version of departmental history "with evil motive and actual malice." The trial court dismissed the second amended complaint as to FSU with prejudice, anyway,[2] and this appeal ensued.
We proceed on the assumption that the facts are as the plaintiffs below fairly alleged in the second amended complaint. "For purposes of ruling on the motion to dismiss, the trial court was obliged to treat as true all of the [second] amended complaint's well-pleaded allegations, including those that incorporate attachments, and to look no further than the [second] amended complaint and its attachments. See Brewer v. Clerk of the Circuit Court, 720 So.2d 602, 603 (Fla. 1st DCA 1998)." City of Gainesville, 778 So.2d at 522. "A reviewing court operates under the same constraints." Andrews v. Fla. Parole Comm'n, 768 So.2d 1257, 1260 (Fla. 1st DCA 2000).
Sovereign immunity is no bar to appellants' negligent defamation claim. "First, for there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct." Trianon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So.2d 912, 917 (Fla. 1985). Here, because of the common law duty publishers owe non-public figures, the second amended complaint adequately stated a claim for relief against FSU in alleging that FSU negligently published defamatory material about Mr. Rudloe and Gulf Specimen.[3]See Ane, 458 So.2d at 242 (holding that "it is sufficient that a private plaintiff prove negligence" in a defamation action).
We find no merit in FSU's highly problematic assertion that it enjoys blanket immunity for anything editors of its alumni publications say, write or allow to be published about FSU alumni. After all, our supreme court has said, "[s]ection 768.28 evinces the intent of our legislature to waive sovereign immunity on a broad basis." Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1022 (Fla. 1979). The negligent fact checking alleged in the present case was "tactical or `operational,'" and did not involve law enforcement or "basic governmental policy making," White v. City of Waldo, 659 So.2d 707, 711 (Fla. 1st DCA 1995), of the kind that occurs in "the discretionary planning or judgment phase." City of Hialeah, 468 So.2d at 919. "Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy." Commercial Carrier Corp., 371 So.2d at 1021. Like the supreme *1165 court in City of Pinellas Park v. Brown, 604 So.2d 1222, 1226 (Fla.1992), "we cannot accept petitioners' argument in favor of sovereign immunity in this case. We utterly fail to see how [FSU's alleged role in] the events alleged in this complaint [is] anything but `operational.'"
Reversed and remanded.
PADOVANO and HAWKES, JJ., concur.
NOTES
[1] Dr. Karl's account of departmental history published in the newsletter reads as follows:

During my first year as a graduate student, I had an opportunity to participate in a research expedition to the Cariaco Trench ....
Also aboard the R/V Eastward Cariaco Trench expedition was Allan Z. Paul, a graduate student of the department's most famous scientist at that time, Bob Menzies.... Among other discoveries, Menzies is known for his recovery from the abyssal regions of the Peru-Chile trench, of the "living fossil" mollusc Neopilina. There was a former FSU-ocean student, Jack Rudloe who also owned the Gulf Specimen Company and wrote a book entitled The Erotic Ocean. An unconfirmed rumor in the department at that time was that Menzies' priceless Neopilina specimen once disappeared from the lab only to later show up for sale in Rudloe's Gulf Specimen Company catalog. We were never sure whether that was the cause of his "former student" status or not, and quite frankly were afraid to ask.
[2] In pleading malice on the part of FSU in the first amended complaint, Mr. Rudloe pleaded (by necessary implication) an intentional tort on the part of a University employee or other agent. The doctrine of sovereign immunity bars recovery on such a theory. See § 768.28(9)(a), Fla. Stat. (2000) ("The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."); Smith v. State, Bd. of Regents, 701 So.2d 348, 349-50 (Fla. 1st DCA 1997) ("Florida has not waived its original sovereign immunity as to acts done maliciously or in bad faith, as alleged in the complaint here on review."). "The very need to allege and prove willful, wanton or malicious conduct to sustain an action against [an employee] makes the case non-actionable against the county." Kirker v. Orange County, 519 So.2d 682, 684 (Fla. 5th DCA 1988).
[3] The second amended complaint alleges compliance with the notice requirement laid down by section 770.01, Fla. Stat. (2000), as a condition precedent to suit.