953 So.2d 677 (2007)
David DE VAUX, Appellant,
v.
WESTWOOD BAPTIST CHURCH, Appellee.
No. 1D06-2666.
District Court of Appeal of Florida, First District.
April 4, 2007.
*679 Richard S. Johnson, Destin, for Appellant.
Jennifer Hanson Copus, Dowd Law Firm, Destin, for Appellee.
VAN NORTWICK, J.
David de Vaux appeals a final judgment dismissing with prejudice his complaint seeking specific performance of an alleged "real estate purchase agreement" with Westwood Baptist Church (Westwood), appellee. We agree with the trial court that the writings comprising the alleged agreement fail to include essential terms of an enforceable contract for the purchase of real property. Thus, we agree that the complaint fails to state a cause of action for specific performance, and we affirm. Further, because the arguments raised by de Vaux on appeal are completely unsupported by the application of the law, we find this appeal frivolous and grant Westwood's motion for appellate attorney's fees pursuant to section 57.105, Florida Statutes (2005).
De Vaux's complaint for specific performance alleges, in pertinent part, as follows:
5. Defendant is interfering with the Plaintiff's equitable right to possession of the real property.
6. On or about May 29, 2005, Plaintiff and Defendant entered into a Real Estate Purchase Agreement, (the "Agreement") for the purchase of property located in Okaloosa County described as: Oakland ADD LOTS 1, 2, 9 & 10 EXC. N60 FT. LOT 10 BLK. 2, Okaloosa County, Florida. A copy of the contract is attached hereto and referenced as Exhibit "A" as if incorporated herein.
7. The purchase price of the property set forth in the agreement was $535,000.00.
* * *
9. Plaintiff has performed all conditions precedent to the "Agreement" or they have occurred.
10. Notwithstanding this, Defendant has failed and refused to perform Defendant's part of the "Agreement."
11. Plaintiff does not have an adequate remedy at law.

*680 12. Plaintiff is in possession of the real property by way of equity.
Exhibit A incorporated into the complaint consists of two one-page documents. The first document is a letter dated May 19, 2005, from de Vaux to Westwood offering to purchase a parcel of real property. In material part, the letter states:
I am proposing an offer to buy from Westwood Baptist Church of 401 NW Hollywood Blvd. 60,000 sq. feet of property. The property would consist of 200 ft. located on Hollywood Blvd. by 300 ft. deep. I am offering $535,000.00 for the property subject to the following terms.
1. Buyer will pay for all closing costs including loan costs, City of FWB Administration fees, Water and Sewer fees, Impact fees and Comprehensive Plan review fees.
2. After signing a contract of good faith buyer will have 45 days to do a feasibility study on the property. The property would be subject to the zoning being R-2 and be consistent with the Comprehensive Plan of Fort Walton Beach. The property must be approved to hold 24 units.
3. The above-mentioned property is presently not in compliance with the Comprehensive Plan. Westwood Baptist Church and buyer would work together in full cooperation to change the Comprehensive Plan concerning the above land. Buyer will do necessary paperwork involved in changing Comprehensive Plan.
4. We would close on the property 30 days after the city of Fort Walton Beach approves a development order.
5. Westwood Baptist Church would finance the property at 1/2 percent under prime at the time of closing. Buyer would pay interest payments quarterly. This contract will take precedent until a more detailed legal contract can be drawn up stating terms, conditions, dates and financing.
The second document that makes up Exhibit A is the handwritten minutes of a special church business meeting of Westwood held on May 29, 2005. These minutes provide:
Tuesday, May 29, 2005
A special church business meeting was called. With all known members being notified by mail.
Pastor Art Johnson called the meeting to order at the close of the morning service. (11:50 a.m.).
After making it clear to the body, the purpose of the meeting, a motion was called for, by the moderator.
A motion was made to sell the churches' vacant lot, 200' x 300' on Hollywood Blvd., to Mr. David de Vaux, accepting his off [sic] (attached), with the Trustees of the church being authorized to work out all the details.
Motion seconded and carried.
Art Johnson, Moderator
Shirley Johnson, Clerk
The complaint contains no allegations that a trustee or agent of Westwood ever communicated to de Vaux the church's acceptance of his offer or the terms of the "details" to be worked out between the parties.
Westwood moved to dismiss on the ground that de Vaux's complaint failed to state a cause of action because, among other things,
A meeting of the minds of the parties in all essential elements is a prerequisite to an existence of an enforceable contract, and where it appears, as in the present case that parties are continuing to negotiate as to the essential terms of an agreement, there can be no meeting of the minds.
*681 The record does not reflect whether de Vaux sought leave to amend his complaint. The trial court summarily dismissed the complaint with prejudice.
De Vaux appeals this judgment arguing that the letter and minutes, read together, set forth all essential terms of an agreement, and, thus, the complaint does properly state a cause of action for breach of contract and specific performance. He claims that he made a valid offer and that his offer was accepted unconditionally by the church. Westwood argues in response that the documents comprising Exhibit A do not show a meeting of the minds as to the essential terms of an enforceable agreement for the purchase of real property, that Westwood's minutes show that issues remained to be negotiated and that the complaint does not allege that an acceptance of the offer was communicated to de Vaux. Thus, Westwood asserts, the complaint seeking specific performance was properly dismissed. Westwood also seeks an award of attorney's fees pursuant to section 57.105.
The sufficiency of a complaint in a civil action is a question of law, Rittman v. Allstate Insurance Co., 727 So.2d 391 (Fla. 1st DCA 1999); McKinney-Green, Inc. v. Davis, 606 So.2d 393 (Fla. 1st DCA 1992), and our standard of review is de novo. Steuart Petroleum Co. v. Certain Underwriters at Lloyd's London, 696 So.2d 376 (Fla. 1st DCA 1997). Our review here is limited to the allegations within the four corners of the complaint and the attachments incorporated into the complaint. Rudloe v. Karl, 899 So.2d 1161, 1164 (Fla. 1st DCA 2005). Further, we are obligated to accept the allegations as true and consider them in a light most favorable to the non-moving party. Magnum Capital, LLC v. Carter & Assocs., LLC, 905 So.2d 220 (Fla. 1st DCA 2005); Bell v. Indian River Mem'l Hosp., 778 So.2d 1030 (Fla. 4th DCA 2001). Thus, we review the sufficiency of the complaint on the assumption that the facts are as the plaintiff below alleged. Rudloe, 899 So.2d at 1164.
To have an enforceable contract for the purchase of real property, the statute of frauds[1] requires the contract to satisfy two threshold conditions. First, the contract must be embodied in one or more written documents or memoranda signed by the party against whom enforcement is sought.[2] Second, the writings must include all of the essential terms of the purchase and sale, and those terms may not be provided by resort to parol evidence. Socarras v. Claughton Hotels, Inc., 374 So.2d 1057, 1059 (Fla. 3d DCA 1979). The issue presented in this case is whether the alleged agreement contains the essential terms of a contract for the purchase and sale of real property. "[A] meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract, and where it appears that the parties are continuing to negotiate as to essential terms of an agreement, there can be no meeting of the minds." Central Props., Inc. v. Robbinson, 450 So.2d 277, 280 (Fla. 1st DCA 1984), modified on other grounds, *682 468 So.2d 986 (Fla.1985); accord Irby v. Mem'l Healthcare Group, Inc., 901 So.2d 305, 306 (Fla. 1st DCA 2005); Allen v. Berry, 765 So.2d 121 (Fla. 5th DCA 2000); Drost v. Hill, 639 So.2d 105 (Fla. 3d DCA 1994); 777 Flagler Co. v. Amerifirst Bank, 559 So.2d 1210 (Fla. 4th DCA 1990); Balter v. Pan Am. Bank of Hialeah, 383 So.2d 256 (Fla. 3d DCA 1980); Brown v. Dobry, 311 So.2d 159 (Fla. 2d DCA 1975). "In order for a contract to be subject to specific performance, it must appear from the writing constituting the contract that the obligations of the parties with respect to [the] conditions of the contract and actions to be taken by the parties are clear, definite and certain." Brown v. Dobry, 311 So.2d at 160; accord Drost v. Hill, 639 So.2d at 106; Lasseter v. Dauer, 211 So.2d 584, 585 (Fla. 3d DCA 1968); see also Bay Club, Inc. v. Brickell Bay Club, Inc., 293 So.2d 137, 139 (Fla. 3d DCA 1974). Further, the acceptance of the offer must be communicated to the offeror. Kendel v. Pontious, 261 So.2d 167, 169-70 (Fla. 1972)("An acceptance, . . . which only remains in the breast of the acceptor without being communicated to the offeror, is no binding acceptance."). We agree with the trial court that the purported agreement here fails to include essential elements of a contract for the purchase and sale of real property.
As a general rule, "[t]here is no definitive list of essential terms that must be present and certain to satisfy the statute of frauds [and] the essential terms will vary widely according to the nature and complexity of each transaction and will be evaluated on a case-by-case basis. . . ." Socarras v. Claughton Hotels, Inc., 374 So.2d at 1060; see also Giovo v. McDonald, 791 So.2d 38, 40 (Fla. 2d DCA 2001)("Certainly, what is an `essential term' of a contract differs according to the circumstances."). We find it obvious that the de Vaux letter and the Westwood minutes, read together, omit essential terms required to establish an enforceable contract for the purchase of real property. The most conspicuous omissions relate to the financing terms. Paragraph five of the de Vaux letter requires that Westwood provide de Vaux purchase money financing. Essential terms of the financing, however, are not included in the purported agreement, such as the date of the maturity of any promissory note, whether the quarterly payments of the debt would include any amortization of principal, and whether the financing would be secured by a mortgage on the subject property or other assets of de Vaux. See, e.g., Philbrick v. Wedel, 411 So.2d 973 (Fla. 3d DCA 1982)(holding that financing portion of agreement was too indefinite in its terms to be susceptible to specific performance).
In addition, while the Westwood minutes do evince the church's interest in selling its property to de Vaux, the minutes also authorize trustees of the church to "work out all the details," indicating that issues remained to be negotiated before a definite agreement would be executed. Finally, the complaint does not allege that trustees or agents of Westwood have at any time communicated to de Vaux their acceptance of his offer. See Kendel v. Pontious, 261 So.2d at 169-70. Accordingly, we affirm the order of dismissal because the complaint wholly fails to state a cause of action for specific performance of a contract for the purchase of real property.
We also grant Westwood's motion for appellate attorney's fees pursuant to section 57.105.[3] We take this opportunity *683 to explain our decision to award fees in this case.
Florida lawyers have both ethical and statutory duties not to file actions, including appeals, that are not supported by the application of the governing law. The ethical duty prohibiting "frivolous" proceedings is imposed by rule 4-3.1, Rules Regulating The Florida Bar (2006).[4] The statutory duty prohibiting claims not supported by "the application of then-existing law to [the] material facts . . . necessary to establish the claim . . ." is imposed by section 57.105(1).[5] It is not certain that the standard for determining whether an action is frivolous under rule 4-3.1 is substantially the same as the standard for awarding fees under section 57.105(1), an issue that we do not reach.[6]
We acknowledge that "to some extent, the definition of `frivolous' is incapable of precise determination." Wendy's of N.E. Florida, Inc. v. Vandergriff, 865 So.2d 520, 524 (Fla. 1st DCA 2003)(quoting Visoly v. Security Pacific Credit Corp., 768 So.2d 482, 491 (Fla. 3d DCA 2000)). The Restatement does provide some definitional guidance, however, by explaining that "[a] frivolous position is one that a lawyer of ordinary competence would recognize as so lacking in merit that there is no substantial possibility that the tribunal would accept it." Restatement (Third) of Law Governing Lawyers § 110, cmt. d. (2000). In addition, under Florida law
there are established guidelines for determining when an action is frivolous. These include where a case is found: (a) to be completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (b) to be contradicted by overwhelming evidence; (c) as having been undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (c) [sic] as asserting material factual statements that are false.
Wendy's, 865 So.2d at 524 (quoting Visoly, 768 So.2d at 491). Under the ethics rules, *684 "[w]hat is required of lawyers . . . is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions." Comment, rule 4-3.1.
Section 57.105(1) mandates a court to award fees to the prevailing party in equal amounts to be paid by the losing party and the losing party's attorney where the court finds that the losing party or the losing party's attorney knew or should have known that a claim was, among other things, not supported by the application of then-existing law to the material facts relating to the claim. § 57.105(1)(b), Fla. Stat. Based on the allegations of the complaint and the writings attached to the complaint as Exhibit A, we find that the complaint and this appeal are wholly without merit. De Vaux's claim for specific performance is objectively meritless in that, given the obvious omission of essential terms from the writings that allegedly constitute the agreement, no reasonable lawyer knowledgeable about the law governing this action could have expected to obtain specific performance based on these writings or could have expected to obtain reversal of the trial court's ruling in an appeal. Since the law applicable to this case is clear and well-settled, de Vaux and his lawyer knew or should have known that the relief sought in the complaint and the arguments presented to this court asserting grounds for specific performance were not supported by the application of the law. See § 57.105(1)(b), Fla. Stat. Moreover, de Vaux has made no effort to distinguish the applicable law or, in good faith, to argue for an extension, modification or reversal of existing law. See Mercury Ins. Co. of Florida v. Coatney, 910 So.2d 925, 927 (Fla. 1st DCA 2005)(noting that appellant's initial brief made no reference to a "good faith effort to change existing law" regarding appellant's liability and thus appellant was subject to attorney's fees pursuant to section 57.105). By making frivolous claims, de Vaux and his lawyer imposed needless burdens on both Westwood and the courts. Westwood was obligated to incur substantial expense defending de Vaux's claims in the trial court and on appeal, and the judicial system was required to expend its resources to address the meritless claims.
This case is not an instance of a court chilling creative lawyering. See generally, Monroe H. Freedman & Abbe Smith, Understanding Lawyer's Ethics 97-8 (Matthew Bender 2004). Certainly, lawyers are expected to be zealous advocates for the interests of their clients.[7] They are also officers of the court,[8] however, even though these two roles may sometimes appear to be in conflict. See generally, Eugene R. Gaetke, Lawyers as Officers of the Court, 42 Vand. L.Rev. 39, 40 (1989). As an officer of the court, among other things, a lawyer must not file frivolous claims, rule 4-3.1, Rules Regulating The Florida Bar, or unnecessarily burden third parties, rule 4-4.4. See generally, David B. Wilkins, Who Should Regulate Lawyers?, 105 Harv. L.Rev. 799, 815 (1992). Said another way, *685 an attorney has a duty to refrain from advocacy, such as filing frivolous claims, which undermines or interferes with the functioning of the judicial system. See Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1546 (11th Cir.1993)("An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly. This concept is as old as common law jurisprudence itself."). A lawyer who files a frivolous lawsuit or a meritless appeal on the instructions of the client without informing the client of the weakness of the claim is violating both a duty to serve the client's interests and a duty to the judicial system. See generally, Mullins v. Kennelly, 847 So.2d 1151, 1154 (Fla. 5th DCA 2003).
Because we find that de Vaux and his lawyer made objectively groundless arguments on appeal, a monetary sanction is appropriate here. As we did in Smith v. Gore, 933 So.2d 567, 568 (Fla. 1st DCA 2006), "[w]e again remind the bar that section 57.105 expressly states courts `shall' assess attorney's fees for bringing, or failing to timely dismiss, baseless claims or defenses." See also Albritton v. Ferrera, 913 So.2d 5, 8-9 (Fla. 1st DCA 2005)(noting that the word "shall" in section 57.105 evidences "the legislative intent to impose a mandatory penalty in the form of reasonable attorney's fees to discourage baseless claims, by placing a price tag on losing parties who engage in these activities"). We believe that applying sanctions in cases such as this will protect this court's ability to serve litigants with meritorious cases, will encourage lawyers to give thoughtful consideration as to whether there are non-frivolous grounds for an appeal before filing, and will discourage lawyers from raising meritless appellate arguments on the chance that they will "stick." "The filing of an appeal should never be a conditioned reflex. `About half the practice of a decent lawyer consists in telling would-be clients that they are damned fools and should stop.'" Hill v. Norfolk & Western Ry. Co., 814 F.2d 1192, 1202 (7th Cir.1987)(quoting 1 Jessup, Elihu Root 133 (1938)).[9]
Accordingly, the final judgment is AFFIRMED, and the cause is REMANDED to the trial court for the assessment of attorney's fees to be paid in equal parts by de Vaux and de Vaux's counsel, Richard S. Johnson.
BARFIELD and THOMAS, JJ., concur.
NOTES
[1] The statute of frauds, section 725.01, Florida Statutes (2005), provides, in pertinent part:

No action shall be brought whereby to charge . . . any person . . . upon any contract for the sale of lands, . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith. . . .
[2] Several writings may be aggregated to satisfy the requirements of the statute. Kolski ex rel. Kolski v. Kolski, 731 So.2d 169, 171 (Fla. 3d DCA 1999).
[3] We are limited in our authority to impose sanctions under section 57.105(1) to granting fees for conduct occurring on appeal. Boca Burger, Inc. v. Forum, 912 So.2d 561, 569 (Fla.2005).
[4] Rule 4-3.1 provides, in part, that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."
[5] Section 57.105, Florida Statutes, provides, in pertinent part:

(1) Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
(a) Was not supported by the material facts necessary to establish the claim or defense; or
(b) Would not be supported by the application of then-existing law to those material facts.
[6] We have previously explained:

While the revised statute incorporates the "not supported by the material facts or would not be supported by application of then-existing law to those material facts" standard instead of the "frivolous" standard of the earlier statute, an all encompassing definition of the new standard defies us. It is clear that the bar for the imposition of sanctions has been lowered, but just how far it has been lowered is an open question requiring a case by case analysis. . . .
Wendy's of N.E. Florida, Inc. v. Vandergriff, 865 So.2d 520, 524 (Fla. 1st DCA 2003)(quoting Mullins v. Kennelly, 847 So.2d 1151, 1155 n. 4 (Fla. 5th DCA 2003)).
[7] "A lawyer . . . may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Comment, rule 4-1.3, Rules Regulating The Florida Bar.
[8] "A lawyer is . . . an officer of the legal system, and a public citizen having special responsibility for the quality of justice." Preamble, Chapter 4, Rules Regulating The Florida Bar.
[9] Lawyer-statesman Elihu Root was secretary of war to President William McKinley, secretary of state to President Theodore Roosevelt, United States senator, and recipient of the Nobel Peace Price. See http://nobel prize.org/nobel_prizes/ laureates/1912/root-bio.html. Root's blunt statement, quoted above by the Seventh Circuit, demonstrates his view that lawyers should exercise professional detachment and assert moral influence in giving advice the client may not want to hear. See Bruce A. Green, Thoughts About Corporate Lawyers After Reading the Cigarette Papers: Has the "Wise Counselor" Given Way to the "Hired Gun"?, 51 DePaul L.Rev. 407, 411-412 (2001). As Professor Deborah Rhode has explained in more scholarly language:

The stress, acrimony, and financial pressures that can accompany legal disputes often compromise clients' ability to perceive their own long-term interests or the ethical implications of self-serving behavior. . . . At the very least, lawyers can provide a useful reality check for individuals whose judgment is skewed by self-interest or cognitive biases.
Deborah L. Rhode, Moral Counseling, 75 Fordham L.Rev. 1317, 1320 (2006).