965 So.2d 232 (2007)
NU-VISION, LLC, etc., Petitioner,
v.
CORPORATE CONVENIENCE, INC., Respondent.
No. 5D06-3815.
District Court of Appeal of Florida, Fifth District.
September 7, 2007.
*233 Mark S. Reisinger, of Railey & Harding, P.A., Orlando, for Petitioner.
James S. Toscano and Jennifer R. Dixon, Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for Respondent.
LAWSON, J.
Petitioner Nu-Vision, LLC, ("Nu-Vision"), seeks certiorari review of an order granting respondent Corporate Convenience's, ("Convenience"), motion to discharge a lis pendens placed on real property. Nu-Vision filed its notice of lis pendens in connection with its claim for specific performance of a purported option to purchase the property from Convenience. Finding that the lis pendens was properly dissolved, we deny certiorari.
Convenience owns commercial real estate in Orlando. On December 16, 2004, Nu-Vision tendered a letter to Convenience proposing a thirty-six-month commercial lease and "purchase agreement," setting forth a scaled purchase price from $950,000 to $1,050,000, depending upon when during the lease period the transaction occurred. Additional terms for the purchase were not included in the letter. Rather, it states that "a contract will follow" if both parties sign the letter.
Both parties signed the letter, and subsequently executed a nineteen-page commercial lease agreement. The lease contained a standard integration clause, reciting that it included all promises, agreements and understandings between the parties and that no additional "covenants, promises, agreements, conditions or understanding, either oral or written *234 exist other than are herein set forth." The lease, however, only contains one oblique reference to the potential purchase. A paragraph requiring Nu-Vision to make a $15,000 security deposit contains the following sentence: "If building is purchased prior to March 1, 2005 then the $15,000.00 is to be a down payment." Nu-Vision did not attempt to purchase the property at anytime in 2005.
In 2006, the business relationship between the parties deteriorated. Convenience filed a suit for eviction on July 18, 2006, alleging that Nu-Vision had breached its lease by failing to pay rent, and that Convenience had exercised its right to terminate the lease agreement. In response, Nu-Vision filed an answer and counterclaim, alleging that it had attempted to exercise its purchase option in May 2006, and had met several times with Convenience in an attempt to work out "additional terms and conditions" for the sale. According to Nu-Vision's pleading, Convenience orally "agreed to certain terms for the sale" and represented that "it would discuss the terms and conditions of the sale with its attorney and provide a contract" to Nu-Vision. According to the counterclaim, however, Nu-Vision never heard back from Convenience, and then received the eviction complaint.
Based solely upon the December 16, 2004 letter, which Nu-Vision describes as an "option agreement," Nu-Vision attempts to state a cause of action for specific performance. Alternatively, Nu-Vision's counterclaim seeks damages for Convenience's alleged breach of the agreement. In connection with its specific performance claim, Nu-Vision filed a notice of lis pendens to protect its interest in the property and to put others (including potential purchasers) on notice that its claim clouds the property's title. This is the appropriate use for a lis pendens notice under the statute governing lis pendens in Florida. See § 48.23, Fla. Stat. (2006); Chiusolo v. Kennedy, 614 So.2d 491 (Fla. 1993). And, a lis pendens should not be dissolved if the proponent "can establish a fair nexus between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit." Id. at 492. However, establishing a "fair nexus" between a claim in litigation and the property's title requires a little more than simply pleading a theoretical nexus.
"To establish a fair nexus requires the showing of a `good faith, viable claim.'" Bergmann v. Slater, 922 So.2d 1110, 1112 (Fla. 4th DCA 2006) quoting Acapulco Constr., Inc. v. Redavo Estates, Inc., 645 So.2d 182, 183 (Fla. 3d DCA 1994). In this case, Nu-Vision cannot make that showing because the December 16, 2004 letter cannot support an action for specific performance as a matter of law.
For a real estate purchase contract to be enforceable through specific performance it must first be "embodied in one or more written documents or memoranda signed by the party against whom enforcement is sought." De Vaux v. Westwood Baptist Church, 953 So.2d 677, 681 (Fla. 1st DCA 2007). Additionally, "the writings must include all of the essential terms of the purchase and sale, and those terms may not be provided by resort to parol evidence." Id. (citations omitted). We also note that the sufficiency of a complaint in a civil action is a question of law, to be determined from "the four corners of the complaint and the attachments incorporated into the complaint." Id. We therefore determine questions regarding the sufficiency of a civil complaint pursuant to a de novo standard of review. Id.
In this case, the letter relied upon by Nu-Vision contains nothing more than an address for the property, the *235 names of the parties, and a sliding scale for the purchase price. A document containing only these terms is insufficient to support a claim for specific performance of a commercial real estate sale. Id.; Fox v. Sails at Laguna Club Dev. Corp., 403 So.2d 456, 458 (Fla. 3d DCA 1981); Cohodas v. Russell, 289 So.2d 55, 57 (Fla. 2d DCA 1974). Additionally, "where it appears that the parties are continuing to negotiate as to essential terms of an agreement, there can be no meeting of the minds." De Vaux, 953 So.2d at 681 (citations omitted). Here, Nu-Vision's counterclaim alleges that after notifying Convenience of its desire to buy the property, Nu-Vision began negotiations with Convenience as to the terms for sale, and reached some oral understanding as to those terms. However, Nu-Vision also alleges that Convenience never executed a document memorializing whatever oral agreement the parties purportedly reached. Therefore, it is clear from Nu-Vision's own allegations that the parties did not consummate a written agreement that contained elements both parties deemed to be essential. We note that "[a] lesser degree of certainty is required to afford relief for damages than is necessary to decree specific performance," Fox, 403 So.2d at 456 (citations omitted), and make no comment as to the viability of Nu-Vision's claim for damages. However, with respect to the specific performance count, we find that the complaint fails to state a cause of action, and could not therefore support a finding of a "fair nexus" as a matter of law. Because the lis pendens was properly dissolved, Nu-Vision cannot demonstrate any departure from the essential requirements of the law, and certiorari must be denied.
In his dissent, Judge Thompson opines that the "fair nexus" standard does not include any review as to the merits of the lis pendens proponent's underlying claim. We respect Judge Thompson's view, and agree that Chiusolo could be read in the manner he suggests. We also recognize that doing so would lead to a different result in this case. In Chiusolo, our Supreme Court held that the proponent of a lis pendens did not need to demonstrate a "substantial likelihood of success on the merits" of his or her claim in order to maintain a lis pendens for the duration of the suit. 614 So.2d at 492. In our view, however, Chiusolo simply left unanswered the question as to the quantum of proof required of a lis pendens proponent to succeed in defending against a motion to dissolve the lis pendens. The Court stated only that "the burden of proof rests on the proponent" and that the "quantum of proof is not as severe as" the substantial likelihood of success on the merits standard necessary to maintain a temporary injunction under Florida law. Id. at 492 n. 2. The Court would not have needed to place the burden of proof on either party if there was nothing to prove  which would be the case if any allegation in a pleading that states a theoretical connection to the title in real property was sufficient to maintain a lis pendens throughout the litigation.
In our view, it would also be contrary to sound public policy to allow a lis pendens proponent to tie up real property belonging to another person when the proponent cannot even make a minimal showing that there is at least some basis for the underlying claim. And, requiring the proponent to show that he or she has a good faith basis to allege the facts supporting a claim, and that the facts alleged would at least state a viable claim, if true, is completely consistent with the policy concerns articulated in Chiusolo.
The Chiusolo court was concerned that "future purchasers or encumbrancers" of real property would be placed at unnecessary risk under a standard requiring the *236 lis pendens to be dissolved where the proponent has a viable claim affecting title to the property, but simply could not make the higher showing of a substantial likelihood of success on the merits at an early evidentiary hearing. Given the low threshold set by the standard articulated in Bergmann and Acapulco Construction, and which we apply here, we see no danger that trial courts will be dissolving lis pendens that are necessary to put others on notice that a claim of possible merit clouds title to property. For these reasons, we have elected to follow the definition of "fair nexus" adopted by the Third and Fourth Districts after Chiusolo, which requires the proponent to demonstrate a good faith, viable claim.
CERTIORARI DENIED.
TORPY, J., concurring.
THOMPSON, J., dissents with opinion.
THOMPSON, J., dissenting.
I respectfully dissent. In my view, the Supreme Court's decision in Chiusolo v. Kennedy, 614 So.2d 491 (Fla.1993), does not leave room for any analysis as to the viability of the claim supporting a notice of lis pendens. Under Chiusolo, a trial court may not discharge a lis pendens if the proponent has alleged a cause of action that, if established, would affect title to the real property subject to the lis pendens. Therefore, I would grant the writ and quash the order on review, and would also certify conflict with Bergmann v. Slater, 922 So.2d 1110 (Fla. 4th DCA 2006), and Acapulco Construction, Inc. v. Redavo Estates, Inc., 645 So.2d 182 (Fla. 3d DCA 1994). These cases add a test regarding viability of the underlying claim to the "fair nexus" analysis which simply does not exist in Chiusolo. Irrespective of arguments regarding the wisdom of Chiusolo, we are bound to follow its express holding.