BROWNING, J.,
dissents.
Because the majority opinion transgresses binding precedent of this Court and ignores persuasive non-binding, out-of-state precedent by relying on Internet information not contained in the case record and unknown to the parties; fails to follow relevant procedural precedent of substantial persuasive value; and injects the judiciary into adversarial territory heretofore untraveled, I am compelled to dissent.

Analysis of Majority Opinion

General Comments

I do not take issue with the majority opinion’s assertion about the public policy behind the intent of section 766.102, Florida Statutes (2007). But as stated later in this dissent, I do take issue with using these changes to justify a “rush to judgment” at the pleading stage of a medical malpractice action. The statutory changes were enacted for implementation under our traditional adversarial system. Medical personnel were granted rights by the statutory changes, and not immunity from going through adversarial testing. The crux of why I am dissenting is found in the *151 majority opinion’s recitation of certification criteria for cardiology. Great detail is advanced about the requirements for a specialty in cardiology. Yet, these requirements were never presented to the trial judge, and they cannot be found in Dr. Foster’s affidavit, only in the majority opinion. The trial judge will become acquainted with this non-record factual evidence when he reads the majority opinion. This is not how our system should operate. This information should have been lifted from the Internet sites referenced and presented by Petitioners at a hearing before the trial judge in conformity with the rules of evidence, and not injected at the appellate level for discovery by the trial judge after remand.

Procedural Deficiencies

Because we review an order entered on a motion to dismiss, there is procedural precedent that should be applied, and if applied, would require dismissal of the petition. A trial judge, when ruling on a motion to dismiss, is required to take as admitted all allegations of the document (here an unrefuted affidavit) subject to the motion to dismiss. Rudloe v. Karl, 899 So.2d 1161 (Fla. 1st DCA 2005); Todd v. Johnson, 965 So.2d 255 (Fla. 1st DCA 2007). The trial judge applied this principle when denying Petitioners’ motion to dismiss and reached the right result, which should not be disturbed.
Also, as we are exercising certiorari review, to prevail, Petitioners must show that the trial judge deviated from the essential requirements of law, which will cause irreparable harm and injury that cannot be remedied on final appeal. See Reeves v. Fleetwood Homes of Fla., Inc., 889 So.2d 812 (Fla.2004); Royal Marble, Inc. v. Innovative Flooring Stonecrafters of SWF, Inc., 932 So.2d 221 (Fla. 2nd DCA 2005). That test is not met here. If we uphold the trial judge and dismiss the petition, we cannot predict whether the trial judge will make the same ruling after an evidentiary hearing on the issue following remand. This circumstance falls far short of irreparable harm or injury as required by precedent. Accordingly, I would dismiss the petition for this reason, if no other, at this juncture. Of course, on remand this issue will still support a dismissal of the action if shown by record evidence presently lacking.
While the foregoing general certiorari principle supports the petition’s dismissal, more importantly, specific case law compels a dismissal as well. In St. Mary’s, 785 So.2d at 1262, our sister court pointed out the correct parameters of certiorari review in medical malpractice actions as follows:
Certiorari may lie from orders denying motions to dismiss for failure to comply with the presuit requirements of chapter 766 in medical malpractice actions. See, e.g., Citron v. Shell, 689 So.2d 1288,1290 (Fla. 4th DCA 1997), disapproved on other grounds, Cohen v. Dauphinee, 739 So.2d 68 (Fla.1999); Cent. Fla. Reg’l Hosp. v. Hill, 721 So.2d 404, 405 (Fla. 5th DCA 1998). However, certiorari does not lie for appellate courts to reweigh the evidence presented concerning compliance with the presuit statutory requirements.
(emphasis added). Here, there is no doubt that Appellee complied with the presuit requirements of chapter 766; not one step was omitted. However, the majority opinion does not stop there; it pursues the impermissible reweighing of the evidence presented concerning statutory compliance, a clear conflict with and disregarding of St. Mary’s.
Even more significantly, another panel of this court refused to follow the “drift” of the majority opinion’s reasoning and denied certiorari relief in a chapter 766 ac *152 tion. See Abbey v. Patrick, 16 So.3d 1051 (Fla. 1st DCA 2009). Abbey involves denial of certiorari review of a statute of limitations issue under chapter 766 that the majority opinion tries to distinguish as appropriate there, but inappropriate here, by stating: “where the issue is actually one of general applicability, such as a statute of limitations, rather than an issue specifically peculiar to medical malpractice actions.” This statement is unsupportable. These cases involve whether or not the statute of limitations was tolled under chapter 766.106(4), a provision relating to medical malpractice actions and no other civil actions. Moreover, a statute of limitations issue is more susceptible to traditional cer-tiorari review than here, where evidence injected by the majority is being weighed, and a factual determination made on an expert’s qualification. Simply put, there is no logical way the majority opinion can be reconciled on this point with Abbey. In my opinion, the majority’s disposition here directly conflicts with Abbey and will leave attorneys and trial judges perplexed.
Notwithstanding these procedural deficiencies, which should be dispositive, there are substantive reasons that impel the same result.

Substantive Deficiencies

A correct determination of this petition depends upon whether Respondent’s expert, Dr. Foster, specializes in a similar specialty as Dr. Oken and has extensive related experience in the field under review as specified by section 766.102(5)(a)l.-2.a., Florida Statutes (2007).
Dr. Foster, by sworn affidavit, stated he met all of the required criteria. Significantly, Petitioners did not refute Dr. Foster’s factual allegations, but elected to file a motion to dismiss containing only the unsworn non-expert assertions of their counsel. The Legislature has not defined “similar specialty,” but the majority opinion, relying upon Internet information not contained in the record as its only factual basis, makes a factual determination that Dr. Foster is not engaged in a similar specialty and is not qualified to testify and meet pre-suit requirements under section 766.102(5)(a), Florida Statutes (2007). This approach is without legal support at this stage of the proceeding. The trial judge properly ignored personal use of the Internet and ruled on the basis of the admitted factual allegations in Dr. Foster’s affidavit, and the majority should accept that determination rather than make its de 'novo determination.
Moreover, the use of non-record Internet information violates binding precedent of this court. See Whitley v. State, 1 So.3d 414 (Fla. 1st DCA 2009) (Department of Corrections’ website printout stating when defendant was released from prison declared inadmissible hearsay, necessitating reversal and remand for resentencing). Although Whitley is a criminal case, there is no reason why it is not binding here. Despite Whitley’s admonition, the majority opinion references three Internet citations to support its fact-based determination contrary to that of the trial judge and Dr. Foster’s affidavit. These citations relate to Internet information that goes to the very heart of this appeal: whether Dr. Foster is qualified to testify as a specialist in a similar specialty to Dr. Oken’s specialty. Accordingly, such Internet citations provide the very information (omitted by Petitioners) that is necessary correctly to determine this appeal and should be disallowed.
Significantly, there is out-of-state authority that reaches the same result as Whitley, but on a far more fundamental and far-reaching basis. In N.Y.C. Medical & Neurodiagnostic, P.C. v. Republic Western Insurance Company, 8 Misc.3d 33, 798 *153 N.Y.S.2d 309 (N.Y.App.Div.2004), which reflects my personal view, the court stated:
In conducting its own independent factual research, the [lower] court improperly went outside the record in order to arrive at its conclusions, and deprived the parties an opportunity to respond to its factual findings. In effect, it usurped the role of counsel and went beyond its judicial mandate of impartiality.
Id. at 318 (emphasis added).
Although N.Y.C. Medical & Neurodiagnostic involves an appeal from a trial judge who utilized non-record Internet information to determine a case, there is no reason the same result does not apply to appellate courts. In fact, there exists a far more compelling reason for appellate courts to follow such reasoning: appellate courts are confined to the record compiled below and have no part in a record’s composition.
Moreover, the unsoundness of Internet information usage in similar situations has not gone unnoticed by legal scholars and professional associations that help shape American law. This very subject was addressed in a respected legal periodical, which in pertinent part states:
Are Judges prohibited under canons of judicial conduct from independently accessing the Internet? Not expressly. The Code of Conduct for United States Judges does not address Internet searches by judges, and neither does the American Bar Association’s Model Code of Judicial Conduct, which has been adopted by New York. The Model Code does, however, contain a relevant comment in Canon 3 (“A judge shall perform the duties of judicial office impartially and diligently”). The commentary to that canon states, “A judge must not independently investigate facts in a case and must consider only the evidence presented.”
[[Image here]]
The ABA Joint Commission to Evaluate the Model Code of Judicial Conduct has recently proposed a revision to the Model Code that more specifically restricts judges from accessing the Internet. The Commission’s 2004 draft of the Model Code states within its rule 2.09 that “a judge shall not independently investigate facts in a case.” The commentary to that rule provides as follows: “The prohibition against a judge investigating the facts of a case independently or through a member of the judge’s staff extends to information available in all mediums including electronic access.” The Association of the Bar of the City of New York Committee on Professional and Judicial Ethics and Committee on Government Ethics jointly responded positively to the Joint Commission’s draft: “Because facts obtained on the Internet and in other electronic media are often incomplete or incorrect, we support this important principle.
David H. Tennant & Laurie M. Seal, “Judicial Ethics and the Internet: May Judges Search the Internet in Evaluating and Deciding a Case?” 16 Professional Lawyer 2, 16 (2005).
Finally, in my view, Internet research is flawed for other reasons as well. Because some judges and staff members are more adroit in Internet use than others, even if we assume complete neutrality, which generally is very difficult in such situations, what checks exist on the proficiency or objectivity of the judiciary’s use of the Internet free of the restraints of our adversary system? The answer is self-evident: There is no check, and judicial use of the Internet to compile non-record evidence in an appeal should be prohibited until authorized and regulated by the evidence code. The record should contain only evidence that has been tested in our *154 adversarial process, and not by unsupervised judges and staffs.

Footnote 1 of Majority Opinion

After reviewing the foregoing part of this dissent, the majority opinion amended its opinion by a footnote 1 as a rebuttal to my Internet comments. After stating that the majority opinion would remain the same regardless of its Internet usage, the majority cites many cases to support the use of Internet information here. From this effort, I can only assume the majority opinion is asserting that it is perfectly all right to use Internet information in a ease, provided it is judicially sanctioned. What the majority opinion fails to address is that a court’s use of Internet information, divorced from the parties’ input through the adversarial process, is error.
This error is illuminated by the very cases the majority opinion cites in support of Internet usage. All of the cases are decisions that involved evidentiary hearings or undisputed factual issues that produced record evidence compiled by the parties, and not judges as here. See Per-kovich (appeal from final judgment of dissolution of marriage); Gonzalez (appeal from final summary judgment); Rogers (appeal from murder conviction); Ward (appeal from denial of writ of prohibition to stop involuntary commitment proceedings under Jimmy Ryce Act); Strand (appeal from final judgment validating proposed bond issue); Williams (appeal from final summary judgment); Green (appeal from final judgment of restitution); Hollo-well (appeal from a motion to dismiss decided on insufficient jurisdictional allegations contained within the four corners of the complaint and Internet citations relating to a case citation from the United States Supreme Court official docket and a news article not at issue); Certification (non-adversarial original proceeding on the need for additional judges); E.A.R. (appealed from juvenile sentence departure); Webster (appeal from a judgment denying admission to The Florida Bar after an evidentiary hearing); Browning (appeal from an order granting class certification following a full evidentiary hearing); Ghiem (appeal from final summary judgment); BoHell (appeal from final judgment of dismissal. Opinion cites a dictionary Internet cite that gives a definition of the word “party”) Kitchens (appeal from final order modifying alimony); Peterson (writ of prohibition to review denial of motion to dismiss based on statutory immunity Internet citation to Wikipedia, which established that section 776.013, Florida Statutes, is popularly known as the “Stand your Ground Law.” Whether this was in fact the popular nickname for section 776.013 apparently was not in dispute, and whether its usage was stipulated to by the parties cannot be discerned.); and Graham (appeal from a final life sentence without parole).
An examination of the foregoing cases reveals why the majority opinion contains the statement: “First, it should be noted that the result would not have been any different without the Internet citations.” Ante p. 148 n. 2. This is indeed a correct statement because all the cases cited concern appellate review after evidentiary hearings, or relate to issues not in dispute, and cannot support a correct decision here. None of them remotely addresses judicially injected facts that decide a controlling issue in a ease, as does the majority opinion here. Moreover, many of the cases do not reveal the evidentiary nuances that led to the Internet citations’ being used, such as the existence of a stipulation authorizing its admissibility by the parties or reflecting undisputed fact. Because we are concerned here with an appeal of a denial of a motion to dismiss, these cases actually support the position of this dissent, and *155 the majority opinion has been “hoist on its own petard.”
Significantly, no rule of evidence permits the admission of Internet information as evidence, absent a party’s stipulation. Section 90.706, Florida Statutes (2007), the evidence rule that is most analogous to Internet information as evidence, prohibits the use of a learned treatise as substantive evidence. See Green v. Goldberg, 630 So.2d 606 (Fla. 4th DCA 1998). This rule was applied in Green, a medical malpractice case, wherein the court opined by a statement applicable here as follows:
Under section 90.706, Florida Statutes (1991), authoritative publications can only be used during the cross-examination of an expert and not to bolster the credibility of an expert or to supplement an opinion of the doctor which has already been formed. Chorzelewski v. Drucker, 546 So.2d 1118 (Fla. 4th DCA 1989); Tallahassee Memorial Regional Medical Center v. Mitchell, 407 So.2d 601 (Fla. 1st DCA 1981). Section 90.706 does not allow statements in a learned treatise to be tised as substantive evidence since the treatise is hearsay if it is offered as substantive evidence.
Oreen, 630 So.2d at 609. (emphasis added).
Because there is no evidence rule that specifically authorizes substantive use of Internet information, and section 90.706 prohibits the use of a learned treatise as substantive evidence, I am perplexed why the majority opinion advances what appears, at least by implication, to be a defense of the inadmissible use of Internet information as substantive evidence.
In opposition to the clear precedential relevance of Green and section 90.706, the majority opinion relies upon a factually unrelated case, Weeks, 977 So.2d at 616. Weeks concerned a claim under Florida’s Neurological Injury Compensation Act (NICA) and a final review appeal from a final decision of the Birth-Related Neurological Injury Compensation Association. See id. Once again, that case concerns a final appeal from an evidentiary hearing, and the court there opined that the facts were “undisputed.” I cannot comprehend how this case can possibly supply a prece-dential basis for the majority opinion, as the information alluded to from the Internet citation could not have been admitted without a stipulation of the parties, or else the phrase “undisputed facts” would not have appeared in the opinion. See Green, § 90.706, Fla. Stat. (2007). Yet, the majority opinion denies Respondent’s right to an evidentiary hearing here, but Weeks does not justify that denial.
Finally, somewhat puzzling to me, the majority opinion attempts to place the blame for its inappropriate Internet usage on Appellee. The majority opinion points out that Respondent in this court “neither moved to strike nor raised any objections to the use of the citation.” I find no purpose in such a “deflective disclaimer.” This is an appellate court, not a trial court where the Rules of Civil Procedure prevail. There is no appellate requirement that a motion to strike or objection be made to inappropriate non-record matter or suffer the penalty that facts and issues will be deemed admitted. Moreover, I do not think it unreasonable for a party to comfortably rely on an appellate court confining its determination to the record, and not requiring a party to save it from impermissible transgressions.
For these reasons, I would dismiss the petition and remand for further proceedings to include an evidentiary hearing or other means to augment the record. As the majority opinion conflicts with St. Mary’s, I would certify the conflict for further review. Accordingly, I dissent.