869 So.2d 1246 (2004)
Verena VON MITSCHKE-COLLANDE, and Claudia Miller-Otto, Appellants,
v.
Thomas KRAMER, et al. Appellees.
No. 3D03-2440.
District Court of Appeal of Florida, Third District.
April 7, 2004.
*1247 Hunter & Williams and Vance E. Salter and Christopher N. Johnson, Miami, for appellants.
Hogan & Hartson and Parker D. Thomson and Carol A. Licko and Stephanie L. Carman, Miami, for appellee.
Before SCHWARTZ, C.J., and WELLS, and SHEPHERD, JJ.
WELLS, Judge.
Verena von Mitschke-Collande and Claudia Miller-Otto (collectively "the Heirs"), as the heirs of Siegfried Otto, appeal an order dissolving a lis pendens *1248 filed in conjunction with an action against Thomas Kramer for a bill of discovery and for imposition of a constructive trust. For the following reasons, we reverse.
In December 1991, Siegfried Otto entrusted $145 million to Kramer, then his son-in-law, to invest for Otto in Florida businesses and real estate. Otto ultimately lost confidence in Kramer and demanded immediate return of his money. In 1995, Otto and Kramer entered into a settlement agreement pursuant to which Kramer agreed to provide a complete accounting of the assets he had received from Otto and to surrender all assets entrusted to him by Otto. To this end, Kramer was to immediately return 20 million Deutsch Marks to Otto; to either surrender to Otto, or to pay the reasonable value of, certain real estate holdings in Florida (whether held individually or through interests in corporations); and to repay any amounts used by Kramer for private purposes.
Kramer made the initial DM20 million payment as agreed, but in July 1996, brought suit in Switzerland to nullify the settlement agreement. Otto counter-claimed seeking to enforce the agreement.[1] While that action was pending, Otto died and the Heirs were substituted as plaintiffs.
On April 25, 2000, the Swiss trial court rejected Kramer's attempt to invalidate the 1995 settlement agreement and entered a partial final judgment in favor of the Heirs awarding DM116,498,407 (plus interest) to the Heirs for the value of Miami Beach real estate identified in the 1995 settlement agreement. Recognizing that a value for "objects of art and the not invested assets or surrogates [acquired by Kramer with Otto's funds]" could not be fixed until Kramer provided the accountings that he had contractually agreed to supply as part of the 1995 agreement, the Swiss trial court ordered Kramer to submit complete statements of account to the court for consideration.
Kramer appealed this partial judgment thereby staying it.
In July 2000, the Heirs filed the instant action. Alleging that Kramer "as trustee" was obligated by the Swiss partial judgment enforcing the 1995 settlement agreement to return all assets, "or their surrogates," the Heirs asked for declaratory relief and for imposition of a constructive trust on, among other properties, two parcels of property located on Star Island in Miami Beach. These two parcels were neither identified nor valued in the DM116, 498,407 Swiss partial judgment. The Heirs subsequently amended their complaint to ask for a pure bill of discovery. They also recorded a lis pendens against the two Star Island parcels in conjunction with their constructive trust claim.
The action was dismissed, and the Heirs appealed.
While that appeal was pending, Kramer conveyed the two Star Island parcels to Skipworth Properties Ltd., an entity the Heirs argue is Kramer owned. Approximately six weeks after the transfer, this court reversed the dismissal order, abated the constructive trust claim pending finalization of the Swiss appeal, and authorized the Heirs to proceed with their claim for a bill of discovery. Otto's Heirs v. Kramer, 797 So.2d 594, 597-98 (Fla. 3d DCA 2001).[2]
*1249 Kramer then sought to remove the lis pendens, arguing that it had been dissolved when the action was dismissed and that the Heirs had failed to establish a nexus between these two parcels and the now abated constructive trust claim. The lis pendens was dissolved. The Heirs appealed again.
On December 18, 2002, this court reversed the order dissolving the lis pendens, concluding that the lis pendens had been reinstated upon reversal of the order dismissing the complaint and that "[a]nyone acquiring an interest between the time of [its filing] and its reinstatement after appellate review, [took] ... subject to the lis pendens." Vonmitschke-Collande v. Kramer, 841 So.2d 481, 482 (Fla. 3d DCA 2002) (citation omitted). Less than a month later, on January 9, 2003, a Swiss appellate court affirmed the Swiss partial final judgment in the Heirs' favor. However, the Swiss judgment remained stayed while Kramer sought yet another Swiss appeal.
The following August, the Heirs moved to extend the lis pendens. Kramer opposed the extension claiming, for the second time, that the Heirs had failed to establish a nexus between the subject property and the abated constructive trust claim. The lis pendens was discharged once again, this time on the ground that the Heirs had failed to establish any nexus between the legal or equitable ownership of the Star Island property and their claim for a constructive trust against Kramer. The Heirs appealed. We reverse.
A lis pendens provides notice to future purchasers or encumbrancers of real property that "a suit [has been] filed that could affect title in [that] property." Chiusolo v. Kennedy, 614 So.2d 491, 492 (Fla.1993)(emphasis added). This serves the purposes of protecting purchasers from unanticipated disputes, and of protecting those claiming an interest in the property from "intervening liens that could impair any property rights claimed and also from possible extinguishment of [any] unrecorded equitable lien." Id. (emphasis added). In light of these purposes, a lis pendens predicated on an unrecorded document cannot be dissolved where the proponent can "establish a fair nexus between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit." Id. We find that the Heirs satisfied this requirement for two reasons.
First, the Heirs alleged in their complaint that Kramer occupied a position of trust to Otto; that Kramer breached that trust by using Otto's funds to acquire property for himself; and that pursuant to Kramer's 1995 agreement with Otto and the Swiss partial judgment enforcing it, Kramer is obligated to return all funds or assets derived from those funds to the Heirs, including the two Star Island parcels. These allegations state a viable claim for imposition of a constructive trust on these parcels. See Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 422 (1927)(noting that "a court of equity will raise a constructive trust and compel restoration where one, through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for himself which in equity and good conscience he should not be permitted to hold"); Socarras v. Yaque, 452 So.2d 992, 994 (Fla. 3d DCA 1984). Because the order discharging the lis pendens *1250 could jeopardize the Heirs' unrecorded interest in the property at issue in this viable claim (and jeopardize the rights of subsequent purchasers or encumbrancers as well), we believe that a fair nexus was established:
The relevant question is whether alienation of the property or the imposition of intervening liens ... conceivably could disserve the purposes for which lis pendens exists. Where the answer is yes, fair nexus must be found.
Chiusolo, 614 So.2d at 492 (footnote omitted); Acapulco Constr., Inc. v. Redavo Estates, Inc., 645 So.2d 182, 183 (Fla. 3d DCA 1994)(finding that "it was not the plaintiffs' burden to establish their constructive trust claim ... but only to establish a `fair nexus' between the apparent legal or equitable ownership of the subject property and the dispute involved in the instant lawsuit ... [which] requires ... [a] showing of only a good faith, viable claim...."); see also Christian v. Sanderhoff, 731 So.2d 804, 805 (Fla. 4th DCA 1999)(concluding that a proponent of lis pendens does not have to show a "substantial likelihood of success on the merits" or "establish his claim by the greater weight of the evidence" in order to demonstrate a fair nexus; rather, it is sufficient that the proponent demonstrate that, absent a lis pendens, his unrecorded claim against the property could be jeopardized).
Second, we find that the Swiss partial judgment interpreting and enforcing the 1995 settlement agreement, also establishes a fair nexus in this case. That judgment confirms that Kramer breached a fiduciary/trust relationship that he held with Otto, entitling the Heirs not just to the return of money but also to an accounting to identify additional funds and assets to which the Heirs may be entitled.[3]See Aryeh Trading v. Trimfast Group, Inc., 778 So.2d 336, 337 (Fla. 2d DCA 2000)(confirming that fair nexus may be determined by a review of a complaint, a contract, and any other relevant evidence); Avalon Associates of Delaware Ltd. v. Avalon Park Associates Inc., 760 So.2d 1132 (Fla. 5th DCA 2000)(confirming that the contract at issue established a sufficient nexus between the property and the issues in the lawsuit to meet the standard to maintain a lis pendens).
Kramer successfully argued below that the Heirs could not demonstrate a fair nexus because the two Star Island properties were purchased in 1996, well after Kramer and Otto entered into 1995 settlement agreement, and because the Swiss partial judgment awarded only money. This is incorrect. The 1995 settlement agreement addressed more than just those properties identified at that time; it also obligated Kramer to account for additional funds and the assets acquired with them. This would include assets acquired with Otto's funds after the 1995 agreement. Moreover, although the Swiss partial judgment does award a money judgment for certain assets identified in the 1995 agreement, it also obligates Kramer to account for all funds and assets obtained from Otto so that the Heirs may identify and value those assets not already accounted for and thereby obtain return of either the assets themselves or their reasonable value. Thus, contrary to Kramer's suggestions, acquisition of the two Star Island parcels after the 1995 agreement and the entry of a partial money judgment did not preclude a showing of fair nexus.
*1251 Finally, we reject the notion that the Heirs failed to demonstrate a fair nexus because the Heirs failed to prove that these two parcels were purchased with funds obtained from Otto (that is, failed to trace Otto's funds to these parcels). Aside from the fact that the Heirs are not required to prove their constructive trust claim at this juncture, the 1995 agreement and the Swiss partial judgment enforcing it impose the burden on Kramer, not the Heirs, to account for or trace Otto's funds. Kramer has never done so and has avoided doing so by challenging the 1995 agreement in Swiss courts, thereby staying this obligation. This, coupled with an order precluding discovery of matters prior to January 1, 1996, has effectively stymied the Heirs' ability to obtain the very evidence now found lacking.[4] Under the circumstances, the Heirs cannot be faulted for failing to adduce this evidence.
Accordingly, we reverse.
NOTES
[1] Otto also brought suit in the Eleventh Judicial Circuit of Florida seeking to recover funds due under the settlement agreement. That action was dismissed without prejudice on grounds of forum non conveniens.
[2] The trial court thereafter refused to permit the Heirs to take discovery on the issues raised in their abated constructive trust claim, the claim to which the lis pendens related. At Kramer's urging, the trial court limited discovery to federal tax records, bank account records, and those records evidencing Kramer's interests in each corporation and partnership named as a defendant in the action, from January 1, 1996 forward.
[3] At the time the instant order discharging lis pendens was entered, the partial judgment had already been affirmed by one Swiss appeals court and was pending in another. Prior to oral argument in this case, the partial judgment was finally affirmed by the Swiss courts.
[4] Kramer suggests that the Heirs waived the right to complain about the constrictions placed on discovery by not appealing these orders. Orders denying or limiting discovery are not, however, appealable in general. See Cruse v. Cruse, 373 So.2d 440, 441 (Fla. 3d DCA 1979)("We dismiss the appeal from the discovery orders for lack of jurisdiction, Fla. R.App. P. 9.130(a)(3), (4)(5) ..."); see also Duran v. MFM Group, Inc., 841 So.2d 500, 501 (Fla. 3d DCA 2003)("As a general rule, certiorari will not be granted to review an order denying discovery since any error in denying the requested discovery can be remedied on plenary appeal").