# Third District Court of Appeal

## State of Florida

Opinion filed March 13, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D18-1190, 3D18-1323, and 3D18-1726
Lower Tribunal No. 12-11004

_____

**LB Judgment Holdings, LLC,**
Appellant,

vs.

**Luis R. Boschetti, et al.,**
Appellees.

Appeals from non-final orders from the Circuit Court for Miami-Dade County, Rodolfo A. Ruiz, Judge.

Alejandro Vilarello, for appellant.

Bell Rosquete Reyes and Javier A. Reyes and Armando Rosquete; Aran Correa & Guarch and Alexander Esteban and Jorge A. Perez; Greenberg Traurig, P.A., and Julissa Rodriguez and Stephanie L. Varela; Sanchez-Medina, Gonzalez, Quesada, Lage, Gomez & Machado LLP, and Peter A. Gonzalez and James C. Kellner; Peterson, Baldor & Maranges, PLLC, and Matthew Maranges, Michael P. Peterson, Jose I. Baldor and Ceasar X. Delgado, for appellees.

Before SALTER, LOGUE[1] and LINDSEY JJ.

_____

[1] Judge Logue did not participate in the oral argument conducted in these cases.

SALTER, J.

LB Judgment Holdings, LLC ("LB Judgment"),[2] judgment creditor (as assignee from Ocean Bank) under a 2015 money judgment exceeding $10 million against Fountains 149, LLC, and Luis R. Boschetti ("Boschetti"), seeks review[3] of a non-final order discharging notices of lis pendens filed against a group of impleaded companies in proceedings supplementary initiated to collect the judgment. LB Judgment contends that the impleaded entities held property (a) in which Boschetti had a property interest, or a debt or other obligation owed to him by, the impleaded companies, or (b) acquired by fraudulent transfer from Boschetti.

We have consolidated the three cases seeking review of related non-final orders:

---

[2] LB Judgment Holdings, LLC, was substituted for the prior owner of the money judgment sought to be collected in the circuit court proceedings supplementary. In this opinion, "LB Judgment" refers to those prior owners/assignors as well.

[3] Although each of the cases was initiated as an appeal from a non-final order under Florida Rule of Appellate Procedure 9.130(a)(3)(B), there are numerous reported Florida appellate opinions treating orders regarding lis pendens and lis pendens bonds as appropriate for certiorari review rather than under the non-final order rule addressing injunctions. Here, as in Rodriguez v. Guerra, 254 So. 3d 521, 521 n.1 (Fla. 3d DCA 2018), we acknowledge both forms of review of such orders and conclude that the result "would have been the same had appellant filed a petition for certiorari relief rather than an appeal."

2

- LB Judgment Holdings, LLC v. Boschetti, Case No. 3D18-1190. This case seeks review of the order discharging LB Judgment's notices of lis pendens filed against real estate held by seventeen of the impleaded entities.[4]

- 1051 North Venetian Drive, LLC v. LB Judgment Holdings, LLC, Case No. 3D18-1323. Several of the impleaded entities appeal an order denying their motion to quash service and to dismiss for lack of personal jurisdiction.

- Boschetti v. LB Judgment Holdings, LLC, Case No. 3D18-1726. In this case, the impleaded entities and certain "interested non-parties" seek review of one part of the bond order requiring LB Judgment to post eighteen bonds in connection with their lis pendens filings, totaling approximately $18,000,000.00 in face amount. Those appellants challenge the circuit court's determination of attorneys' fees in the computation of one of the eighteen lis pendens bonds. LB Judgment cross-appealed the

---

[4] LB Judgment also challenged the subsequent lis pendens bond amount order in its appeal in Case No. 3D18-1190. The bond order was entered pursuant to a relinquishment after the notice of appeal was filed in Case No. 3D18-1190. The relinquishment was granted in order to provide a more complete record for this Court's consideration of a stay pending appeal (framed by LB Judgment's motion for review). We then consolidated all three of the related appeals. We address all of the parties' arguments pertaining to the bond amounts, whether initially raised in Case No. 3D18-1190 or in Case No. 3D18-1726, in the section of this opinion containing the analysis of Case No. 3D18-1726.

3

order as to all seventeen of the property-specific bonds as well as the separate bond established for the impleaded defendants' attorneys' fees.

For the reasons which follow, we reverse and vacate the order discharging the notices of lis pendens (Case No. 3D18-1190); we affirm the order sought to be appealed by several of the impleaded entities (Case No. 3D18-1323); and we affirm the bond order as to the seventeen properties owned by impleaded parties as well as the "Attorneys' Fees Bond," in the appeal and cross-appeal in Case No. 3D18-1726. As each of the three appeals has been taken from a non-final order, we vacate our temporary stay of the bond order, allowing full pretrial discovery and trial to ensue.

I.    The Order Discharging the Notices of Lis Pendens (3D18-1190)

A.    Standard of Review and "Fair Nexus"

This appeal turns on a legal issue, and thus our review is de novo. Section 48.23, Florida Statutes (2018), governs notices of lis pendens and the prerequisites for filing them. Section 48.23(3) specifies that when, as here, the underlying lawsuit is not founded on a "duly recorded instrument" or a lien claimed under part I of chapter 713, Florida Statutes (governing construction liens), "the court shall control and discharge the recorded notice of lis pendens as the court would grant and dissolve injunctions."

Florida's courts have carefully prescribed the procedures to be followed by the trial courts in controlling and discharging a lis pendens in the cases that are not founded on a recorded instrument or construction lien. Trial courts and reviewing courts alike must balance (a) the lis pendens proponent's need to place non-parties on notice of the proponent's claims affecting the owner's real property, and (b) the damages that may be suffered by the owner (as third parties may turn away from the property because of the cloud of litigation) should the proponent's claims fail to prevail.

The balancing is achieved through two considerations: (1) is there a "fair nexus between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit"? Chiusolo v. Kennedy, 614 So. 2d 491, 492 (Fla. 1993); and (2) if there is such a nexus, what is the appropriate amount of a lis pendens bond to be required of the proponent, bearing "a reasonable relationship to the amount of damages which the property-holder defendant demonstrates will likely result if it is later determined that the notice of lis pendens was unjustified"? Med. Facilities Dev., Inc. v. Little Arch Creek Props., Inc., 675 So. 2d 915, 918 n.2 (Fla. 1996).

"Fair nexus" is the issue we address in Case No. 3D18-1190, while lis pendens bond amounts are addressed here as part of Case No. 3D18-1726. Importantly, at the preliminary procedural point of a motion to dismiss the lis

pendens before trial, the evaluation of "fair nexus" is not a trial or mini-trial on the merits of all elements of the lis pendens proponent's claims. Rather, "[t]he relevant question is whether alienation of the property or the imposition of intervening liens...conceivably could disserve the purposes for which lis pendens exists. Where the answer is yes, fair nexus must be found." Von Mitschke-Collande v. Kramer, 869 So. 2d 1246, 1250 (Fla. 3d DCA 2004) (alteration in original) (quoting Chiusolo, 614 So. 2d at 492).

In Acapulco Construction, Inc. v. Redavo Estates, Inc., 645 So. 2d 182, 183 (Fla. 3d DCA 1994), this Court highlighted that distinction: "Clearly, it was not the plaintiffs' burden to establish their constructive trust claim by the greater weight of the evidence, but only to establish a 'fair nexus' between the apparent legal or equitable ownership of the subject property and the dispute involved in the instant lawsuit." We also observed that this requirement could be satisfied by a plaintiff through "an evidentiary showing of only a good faith, viable claim." Id.

In Regents Park Investments, LLC v. Bankers Lending Services, Inc., 197 So. 3d 617, 621 (Fla. 3d DCA 2016), we provided additional guidance, observing that "it is impracticable to require a proponent of a lis pendens to fully prove each element of its claim in an evidentiary hearing where the case has not been noticed for trial and the parties may not even have completed discovery." We agreed with our sibling district court's holding in Nu-Vision, LLC v. Corporate Convenience,

6

Inc., 965 So. 2d 232, 236 (Fla. 5th DCA 2007), that the lis pendens proponent must make "a minimal showing that there is at least some basis for the underlying claim[] [a]nd . . . show that he or she has a good faith basis to allege facts supporting a claim, and that the facts alleged would at least state a viable claim."

### B. The Record in the Present Case

With these authorities in mind, we turn to the case at hand. LB Judgment's amended motion to commence proceedings supplementary includes allegations detailing its efforts to collect the $10,094,867.71 final judgment against Boschetti and Fountains 149, LLC, between entry of the judgment in February 2015 and the filing of the amended motion three years later. Those efforts culminated in nary a dime collected.

But those efforts and diligent investigation did ascertain that certain assets of Boschetti had been transferred to the control of his wife, his brother, and his brother's wife and daughter, through single-purpose entities controlled by them. At least some of the alleged transfers were pursuant to conveyances signed by Boschetti between the commencement of the underlying lawsuit and the entry of the final judgment sought to be collected, with multi-million dollar closing proceeds paid into a family-controlled entity. The supplemental complaint filed against the alleged alter ego entities claims that Boschetti transferred ownership in many of the entities to his wife, sister-in-law, and daughter-in-law "without

7

receiving reasonably equivalent value, if any, in exchange," and that he transferred cash and capital to his spouse and the entities for the operation of the entities' real estate development business, concealing proceeds of the real estate activities from LB Judgment.

The supplemental complaint alleged two primary theories for direct claims against impleaded persons and entities. First, LB Judgment contended that certain entities were "alter ego entities"; that is, that Boschetti and his brother were "de facto owners" of those entities and controlled the disposition of assets that were, in whole or in part, Boschetti's property otherwise amenable to execution in connection with LB Judgment's unsatisfied judgment.

Second, LB Judgment alleged that Boschetti had engaged in fraudulent transfers of assets in order to avoid collection of LB Judgment's judgment, subject to avoidance under sections 726.105 and 726.106, Florida Statutes (2017).[5] These statutes and the remaining provisions of chapter 726 define circumstances in which a transfer is fraudulent as to a creditor based on the actual intent of the transferor/debtor, or in which the debtor transfers assets or assumes obligations without receiving a "reasonably equivalent value in exchange." Section 726.108, "Remedies of creditors," permits a broad assortment of remedies to a creditor

---

[5] LB Judgment also alleged a civil conspiracy to hinder, delay, or defraud LB Judgment, as among Boschetti and the impleaded defendants, and an action for declaratory relief to determine LB Judgment's legal and equitable interests in the impleaded parties and designated properties.

8

entitled to relief from fraudulent transfers, including avoidance of the transfer or obligation "to the extent necessary to satisfy the creditor's claim," attachment, injunctive relief, receivership, and "[a]ny other relief the circumstances may require."

LB Judgment's commencement of proceedings supplementary is authorized by section 56.29, Florida Statutes (2017). In <u>Longo v. Associated Limousine Services, Inc.</u>, 236 So. 3d 1115, 1120 (Fla. 4th DCA 2018), the Fourth District observed that "the current statutory scheme set forth in section 56.29(2) is well-suited to fraudulent transfer cases," though the court questioned whether "the legislature contemplated cases involving alter ego liability." The Fourth District ultimately considered that question and approved such a theory of recovery: "in cases alleging alter ego liability, the description requirement of section 56.29(2) is satisfied if the judgment creditor describes any property of an alter ego of the judgment debtor not exempt from execution in the hands of any person, or any property, debt, or other obligation due to an alter ego of the judgment debtor which may be applied toward the satisfaction of the judgment." <u>Id.</u> at 1121.

LB Judgment filed over 1,000 pages of corporate and property records, a spreadsheet of "ties to Luis Boschetti" for the impleaded single-purpose entities,[6]

---

[6] The spreadsheet used check marks to indicate when an impleaded defendant was engaged in real estate development; when it had the same managers, including Boschetti; when it had the same address of record; when it used the same realtors; when it identified the developer as "BF Group" or "Insignia Development Partners,

9

as well as website screenshots (deleted as collection efforts intensified) of advertisements for a Boschetti company and its portfolio of properties owned by the impleaded defendants. LB Judgment also claims "a pattern of baseless, repetitive objections and motions to quash subpoenas aimed only to delay and obstruct post-judgment discovery" (a claim vigorously denied by Boschetti and the impleaded defendants).

Answering the question framed in Chiusolo, we conclude that the record demonstrates a fair nexus between the apparent legal or equitable ownership of the property described in the notices of lis pendens and the dispute embodied in the supplementary proceeding. Simply stated, if LB Judgment proves its allegations, it may recover the judgment debt through an execution and sale of the property or other assets transferred to Boschetti, or controlled by him, to the extent of that debt and the extent of Boschetti's interest in a particular property or asset.

Subject to the requirements of sections 56.29 and chapter 726, Florida Statutes, LB Judgment may avail itself of the remedies provided by those statutes and need not stand by as a judgment debtor transfers or controls assets in a scheme to avoid the application of the assets to the judgment debt. The proceedings supplementary statute allows a judgment creditor "to ferret out what assets the judgment debtor may have or what property of his others may be holding for him,

LLC"; when there was overlapping bank signature authority; and when it used the same attorneys.

10

or may have received from him to defeat the collection of the lien or claim, that might be subject to the execution." Young v. McKenzie, 46 So. 2d 184, 185 (Fla. 1950) (quoted in Longo, 236 So. 3d at 1118).

This Court has held that when the jurisdictional requirements of section 56.29 have been met (as here), the statute is to be given a liberal construction to provide the judgment creditor the most complete relief possible. Mejia v. Ruiz, 985 So. 2d 1109, 1112 (Fla. 3d DCA 2008). LB Judgment established the requisite fair nexus to the properties identified in the notices of lis pendens, and we therefore reverse and vacate the order discharging the notices.

II. The Order Regarding Service and Jurisdiction (3D18-1323)

The trial court carefully considered the impleaded defendants' emergency motion to quash service and to dismiss for lack of personal jurisdiction at a specially set ninety-minute hearing in May 2018. The court concluded that the requirements of section 56.29 for the issuance of notices to appear were satisfied and denied the emergency motion, citing Longo, 236 So. 3d 1115.

We find no error in the trial court's order denying the impleaded defendants' emergency motion to quash service and to dismiss for lack of personal jurisdiction.

III. The Lis Pendens Bond Order (3D18-1726)

The impleaded defendants owning the properties subject to the notices of lis pendens appealed, and LB Judgment cross-appealed, the order of July 17, 2018,

11

requiring LB Judgment to post eighteen separate cash or surety bonds as a condition of the notices of lis pendens (one for each of the seventeen properties owned by impleaded defendants and described in the notices of lis pendens, and one separate bond as prospective damages for attorneys' fees in the event of an ultimate determination that the notices of lis pendens were improvidently filed).

Under the terms of that order, all eighteen bonds (totaling over $18 million) were required to be posted within three calendar days from the date of the order, failing which the notices of lis pendens would be discharged automatically. No provision was made to allow LB Judgment to post individual bonds on some properties, and to decline to post such bonds on others.

The impleaded parties appealed that order, maintaining that the attorneys' fee bond of $1,088,900 impermissibly excluded "attorneys' fees to be foreseeably incurred in prevailing on the merits of [LB Judgment's] underlying claims." LB Judgment cross-appealed the order, contending here that only the fees incurred in obtaining a discharge of the notices of lis pendens could be recoverable and included as a component of the attorneys' fee bond. As already noted, LB Judgment also challenged the seventeen property-specific bond amounts in the motion for review in Case No. 3D18-1190.

> A.    <u>Damages for Wrongful Lis Pendens—Attorneys' Fees</u>

12

We repeat the text of section 48.23(3) as it relates to notices of lis pendens for which the underlying claim is not founded on a duly recorded instrument or statutory construction lien: "the court shall control and discharge the recorded notice of lis pendens as the court would grant and dissolve injunctions." Injunction bonds are addressed by Florida Rule of Civil Procedure 1.610, and subparagraph (b) of that rule specifies that such bonds are "conditioned for the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined."

As to the attorneys' fees component of a bond, we reject the impleaded parties' argument that such fees include not only those incurred in obtaining a discharge of the lis pendens, but also those fees incurred during the entire litigation in the trial court. See Lake Worth Broad. Corp. v. Hispanic Broad., Inc., 495 So. 2d 1234 (Fla. 3d DCA 1986). The impleaded parties' estimate of $4,678,450.00 in trial and appellate attorneys' fees and costs which might be incurred at the trial of the alter-ego claims is speculative.

The trial court's computation of the incurred fees and costs to date, with an additional allowance for "estimated prospective fees of $541,400," was supported by competent, substantial evidence and will not be disturbed here. The trial court ably followed the methodology for "anticipated attorney's fees incurred by the [property owner] in the event the lis pendens filed by [a lien claimant] was

13

unjustified." S and T Builders v. Globe Props., Inc., 944 So. 2d 302, 303 (Fla. 2006).

Further, section 48.23(2) limits the notices of lis pendens in the present case to a term of one year, as LB Judgment's pleadings are not founded on a duly recorded instrument or construction lien. In order to keep the notices in place beyond that yearlong term, LB Judgment will be required to give reasonable notice, file a motion, and show good cause for the extension. If that occurs, the statute authorizes the trial court to "impose such terms for the extension of time as justice requires." "Such terms" could, of course, include an increase or reduction in the lis pendens bond amount for attorneys' fees based on developments in the case to that point.

### B.    Damages Relating to Effects on Title

LB Judgment also contends that the trial court erred in its determination of the amount of the seventeen property-specific lis pendens bonds in the order of July 17, 2018. The amount of each bond was set following a full-day evidentiary hearing. Our review focuses on the legal issues inherent in setting such bonds rather than the dollar amounts of the "unsecured loans" and "capital contributions" placed in evidence by the impleaded parties and apparently relied upon by the trial court as the measure of prospective damages and thus the bond amounts.

As noted at the outset of this opinion, the Supreme Court of Florida held that the amount of a lis pendens bond "should bear a reasonable relationship to the amount of damages which the property-holder defendant demonstrates will likely result if it is later determined that the notice of lis pendens was unjustified." Med. Facilities Dev., Inc., 675 So. 2d at 918 n.2. The leading case on the computation of damages when a lis pendens has been found unjustified is Haisfield v. ACP Florida Holdings, Inc., 629 So. 2d 963 (Fla. 4th DCA 1993).

Haisfield looks back at losses that were actually suffered by a property owner from a lis pendens found to be unjustified, rather than at prospective losses that might be suffered. Its methodology is the best yardstick for evaluating the market value component of damages that may result from a wrongfully-filed lis pendens. Haisfield instructs that such damages, if any, are measured by any decline in market value between the time the lis pendens is recorded and the time it is discharged. The proponent of a lis pendens might pay no damages if the market value increased substantially during that time. See Levin v. Lang, 994 So. 2d 445 (Fla. 3d DCA 2008).

Haisfield also recognizes that the expenses of preservation and maintenance of the property subject to a lis pendens may be awarded for the interval between recordation and discharge if the lis pendens is found to be unjustified and the expenses are a consequence of the unjustified lis pendens.

In the present case, LB Judgment stipulated that it would not maintain a particular notice of lis pendens in the face of a proposed bona fide, arms'-length sale of a property by an impleaded party. The net proceeds of such a sale would be escrowed to abide the outcome of the proceedings supplementary relating to that party. In theory, this provision of the recorded notices would mitigate damages relating to a lost opportunity for sale.

LB Judgment's expert witness computed, for each of the seventeen properties owned by an impleaded defendant, a fair market value sales price and deductions for brokerage, mortgage debt,[7] and past due taxes. This computation, listed as "net market value," corresponded to the impleaded party's equity in the property.

LB Judgment's expert then applied a percentage[8] for loss of use of those proceeds representing the lost investment return on the equity in that property during the period the notice of lis pendens made the owner unable or unwilling to conclude a sale of the property. The resulting figures were compiled in a spreadsheet for all seventeen properties. The "lost interest for six months" was

_____

[7] On this record, the mortgage debt considered by the expert was based on the mortgage as recorded; the expert did not have discovery documents reflecting the actual balance of the indebtedness or assuring that the mortgage was institutional or at least arms'-length.

[8] The expert used Florida's statutory interest rate on judgments (effective July 1, 2018), 5.97% per annum, as the rate of return on the net sales proceeds calculated for a given property.

16

then advanced as a reasonable bond amount for the lis pendens on each property. The total for all seventeen properties came to $31,696,500 in gross market value, $11,233,301 in net market value (equity), and $343,242 as the proposed lis pendens bond amount.

The impleaded parties proffered a different model for prospective damages—a model neither supported nor rejected by any Florida case on prospective lis pendens damages or bonds. The impleaded parties argued that the notices of lis pendens and cloud of litigation might cause loan defaults or bankruptcies, such that all of the capital contributions and unsecured loans might be lost and the properties foreclosed upon or sold for unpaid taxes. Under this theory, counsel for the impleaded property owners argued that the notices of lis pendens could cut off all sources of investment for the carrying costs and construction of residences on the affected properties, "essentially, game over for every single one of these companies because they will not be able to meet their obligations," (as counsel characterized it).

The impleaded parties provided accounting records titled "Loans & Capital Contributions" for each entity dated two days before the evidentiary hearing. The trial court ultimately accepted a prospective damages model which assumed for each property: (1) mortgage debt would not exceed the value of the encumbered property, so that the lender would take back the property and the debt would be

17

extinguished; and (2) the damages would flow from the loss of all unsecured loans and capital contributions in the title holding entity. Using the authenticated accounting statements and the amounts of the unsecured loans and capital contributions provided by the impleaded parties, the trial court accepted a total of $16,993,632.07 (broken out individually for each property) for the seventeen affected properties.

We labor under the same limitations as LB Judgment and the trial court: pretrial discovery on the fraudulent transfer and alter ego allegations was far from complete on the supplemental complaint. LB Judgment may or may not be able to prove that the judgment debtors concealed their interests in some of the investments (unsecured loans and capital contributions) in the impleaded parties— if those allegations were proven, the bond amount could be unfairly high. But the trial court properly did not engage in conjecture on those issues; nor can we. And to reiterate the point, when and if the emergent facts support a higher or lower bond, the trial court has the discretion (upon motion and further hearing) to reconsider the amount.

We thus affirm the trial court's order setting seventeen separate bond amounts for the properties. We interpret the order to authorize each notice of lis pendens to remain in force or be subject to discharge according to its associated and separate bond requirement, although the separate (and unitary) attorneys' fees

bond applicable to all seventeen notices must also be posted as a condition of the existing order—even if only a single property-related bond is posted.

We reverse that provision of the order requiring that any such bonds be posted within three calendar days (presently stayed by this Court); LB Judgment shall have ten days from the date of this Court's mandate in these cases within which to comply.[9]

IV.   Conclusion

The trial court's non-final order discharging the notices of lis pendens is reversed and vacated. The trial court's order denying certain impleaded parties' motions to quash service and to dismiss for lack of personal jurisdiction is affirmed. The trial court's non-final order establishing the amount of seventeen property-specific lis pendens bonds and a separate "Attorneys' Fee Bond" is affirmed, subject to a modification in the time period allotted for LB Judgment to post the bonds in the requisite form and amounts. The seventeen property-related bonds are separate, such that LB Judgment may post any one or more of them, but if any such bond is posted, then the Attorneys' Fee Bond must also be posted for the specified lis pendens to remain in force. Non-compliance with these bond

---

[9] Section 48.23(4), Florida Statutes (2018), also specifies that the one-year term of the existing notices of lis pendens "does not include the period of pendency of any action in an appellate court."

19

requirements shall entitle the applicable impleaded property owner to the immediate discharge of the notice of lis pendens relating to that property.

Paragraph 6 of this Court's order or October 9, 2018, temporarily staying the trial court's lis pendens bond order, is hereby vacated and is superseded by the provisions of this opinion pertaining to the eighteen bonds in question.

Non-final orders affirmed in part and reversed in part; temporary stay vacated.